## UNITED STATES v. BURNE (No. 1049).[1]

KNITTED COTTON GLOVES IN PART OF WOOL. ·

    The wool in the lining of these gloves enhances their value, adds to their comfort and warmth, aids in their sale, making thus of the wool a substantial and necessary part of the gloves. They do not come within the provisions of paragraph 328, tariff act of 1909, but are dutiable under paragraph 382 of that act as knitted articles composed in part of wool.

### United States Court of Customs Appeals, May 29, 1913.

APPEAL from Board of United States General Appraisers, Abstract 29941 (T. D. 32847).

[Reversed.]

*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.

*Jules Chopak, jr.*, for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal involves the dutiable classification of an importation of knitted gloves in chief value of cotton, containing a minor part of wool. The facts adduced in the record are meager. The articles

---

[1] Reported in T. D. 33515 (24 Treas. Dec., 951).

were rated for dutiable purposes by the collector at the port of New York under the provisions of paragraph 382 of the tariff act of 1909, which, in so far as pertinent, reads:

382. \* \* \* Articles of wearing apparel of every description, \* \* \* and knitted articles of every description made up or manufactured wholly or in part, \* \* \* and not specially provided for in this section, composed wholly or in part of wool, \* \* \*.

The protestant alleged:

I claim that the gloves \* \* \* are plain cotton gloves, containing no wool whatsoever, and should be dutiable \* \* \* as men's cotton gloves, under the provisions of paragraph 328 of said act, which in so far as pertinent reads:

"328. \* \* \* Men's and boys' cotton gloves, knitted or woven," \* \* \*.

The Board of General Appraisers sustained the claim of the importer, basing their decision upon the legal proposition that the provision for men's cotton gloves knitted is more specific than that for articles of wearing apparel of every description composed wholly or in part of wool. The Government appeals. The briefs are elaborate.

While the record clearly establishes and it is unquestioned that the merchandise is men's knitted cotton gloves in part of wool, the exact proportion of wool therein is not so definitely evidenced. It would seem, however, to be satisfactorily established that the portion of wool in the gloves is confined to the linings thereof, so interknitted as to add to the gloves comfort and warmth in the wearing and give them the appearance of, and enable them to be sold as, wool-lined gloves, thereby constituting the wool a necessary and substantial portion of the article in its sale and use.

The legal effect and scope of the respective provisions of the law applied and invoked is well settled. The question as to the legal definition of the words "in part of" as appearing in said paragraph 382 and in various tariff acts has long been settled by a uniform course of adjudication and administrative construction. And to the same effect has been similar adjudication as to the effect of such descriptive words as "cotton" when adjectively applied to such articles or importations as gloves, or cloth, or the like. That uniform course of decision and administrative construction has been that where a tariff provision such as "*cotton* gloves" is employed by Congress it does not mean wholly of cotton, but substantially entirely of cotton. That is to say, there may be a foreign admixture with the cotton, provided that admixture, however, does not amount to a necessary or substantial portion of the imported article. Swan *v.* Arthur (103 U. S., 597, 598); Arthur *v.* Butterfield (125 U. S., 70, 75); Seeberger *v.* Schlesinger (152 U. S., 581, 587); Barber *v.* Schell (107 U. S., 617, 621).

Likewise the words "in part of" appearing in a tariff act have received an interpretation judicially and administratively equally uniform, long continued, and well settled.

The principle covering such cases is clearly and succinctly enunciated by the Supreme Court of the United States in Seeberger *v.*

Schlesinger (152 U. S., 587), wherein, speaking of certain opera glasses in minor part of metal, the court says:

\* \* \*· And in view of the fact that, while the metal is not the component of chief value, it is a *substantial* part of the finished glass, and the framework upon which the lenses and shell are mounted, we think these articles should be classed as manufactures of metal. We do not wish to be understood as holding that, if the metal be a mere incident or an *immaterial part* of the completed article, as, for instance, the screws or knobs upon an article of household furniture, or the buttons upon an article of clothing, such articles should be classified as manufactures in part of metal; but where, as in this case, they form a *necessary and substantial* part of the article, we think this clause should determine their classification.

It will be noted in passing that what is described as a "substantial" part of the merchandise in this case was admittedly a *minor* part of the entire manufacture.

A similar principle was enunciated in the case of Seeberger *v.* Farwell (139 U. S., 608). The question in that case was whether or not certain goods were "wholly of wool," although having a very small admixture of cotton, or should be held to be composed in part of other materials by reason of the existence of the small proportion of cotton. The proportion of cotton was small, amounting to but 6 per cent of the fabric. Speaking of the amount of cotton in the goods, the court said:

The goods in question contained so small an amount of cotton that the ordinary dealer in them and the ordinary examiner would not detect the cotton without a close and careful examination.

The court concludes the opinion by saying:

And that goods made of 94 per cent in bulk of wool and 6 per cent in bulk of cotton fairly came within the description of goods composed in part of wool.

In the case of Magone *v.* Luckemeyer (139 U. S., 612; 11 Sup. Ct. Rep., 651), the last preceding opinion was adhered to by reference. The goods were identical, excepting that the percentage of cotton in the goods varied from 1.99 per cent to 4.47 per cent and was introduced into the warp of the fabric prior to the knitting process. The filling was entirely of wool. Speaking of the goods in that case, the court said:

In appearance, texture, quality, and use, the goods were indistinguishable from women's dress goods composed wholly of wool, and the cotton in them could be discovered only by chemical analysis.

The Supreme Court held, on appeal, that this quality of goods, although the minor part was so fractionally small, came fairly within the description of "composed in part of wool" when contrasted with a provision for goods "wholly of wool."

In United States *v.* Altman *et al.* (107 Fed., 15), the question being were certain corsets "wearing apparel \* \* \* made wholly or in part of lace," the Circuit Court of Appeals for the Second Circuit said:

The importers contend that the amount of lace is so insignificant as not to change the condition of the article, for duty purposes, from what it was before the lace was sewed on. The value of the lace relatively to the corsets is about 1 per cent to 2 per cent. We concur in the finding of the Board of General Appraisers that: "It appears, from *an*

*inspection of the samples,* that the trimming and ornamentation with lace \* \* \*
is a significant feature of these goods, contributing materially to their appearance
and doubtless to their salability and price. Without doubt, such was the purpose for
which it was applied." Such being the case, it may fairly be held they are within
the tariff description, "wearing apparel made in whole or in part of lace," for the lace
enhanced their value and helps to sell them.

And so here, the wool in the lining of these gloves no doubt en-
hances their value, helps to sell them, adds to their comfort and
warmth in use.

In the presence of the finding that the portion of wool in the gloves
is a necessary and substantial part thereof the applicable provision
of the statute is obvious.

In order to be included within the provision for "cotton gloves,"
as in paragraph 328, *supra,* the gloves must be substantially wholly
of cotton—that is to say, they can not be "cotton" gloves and have
a substantial portion thereof made of wool. Having a substantial
portion thereof made of wool they are not within that paragraph.
The same fact and finding, however, is necessary to and does bring
them within paragraph 382 as "knitted articles \* \* \* manu-
factured \* \* \* in part of wool."

Appellant's claim, that the articles are dutiable under paragraph
324, not assigned as error and made for the first time in this court,
comes too late. United States *v.* Fuld & Co. *et al.* (4 Ct. Cust.
Appls., 234; T. D. 33476).

*Reversed.*