UNITED STATES *v.* GUY B. BARHAM CO., FOR UNIVERSITY SHOPPE
(No. 4142)[1]

United States Court of Customs and Patent Appeals, May 2, 1938

*Charles D. Lawrence*, Acting Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.
No appearance for appellee.

[Oral argument April 14, 1938, by Mr. Lawrence]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:[2]

This is an appeal from a judgment of the United States Customs Court, Second Division, holding imported "spun yarn of rayon and cotton, plied, consisting substantially of rayon, the percentages being 80 percent rayon and 20 percent cotton," dutiable as "Spun yarn of rayon * * *, if plied," at 12½ cents per pound and 50 per centum ad valorem under paragraph 1303 of the Tariff Act of 1930, as claimed by counsel for the importer, rather than as "manufactures of filaments, fibers," etc. in chief value of rayon, not specially provided for, under paragraph 1312 of that act, as assessed by the Collector of Customs at the port of Los Angeles, Calif.

---

[1] T. D. 49614.
[2] JACKSON, Judge, took no part in the consideration or decision of this case.

The paragraphs in question read:

PAR. 1303. Spun yarn of rayon or other synthetic textile, 12½ cents per pound, and, in addition, if singles, 45 per centum ad valorem, if plied, 50 per centum ad valorem.

PAR. 1312. Manufactures of filaments, fibers, yarns, or threads, of rayon or other synthetic textile, and textile products made of bands or strips (not exceeding one inch in width) of rayon or other synthetic textile, all the foregoing, wholly or in chief value of rayon or other synthetic textile, not specially provided for, 45 cents per pound and 65 per centum ad valorem.

The issue presented is one of law, and involves the construction and application of the quoted provisions of the tariff act. The question is whether the provision for "Spun yarn of rayon or other synthetic textile," contained in paragraph 1303, *supra*, was intended by the Congress to be limited to yarn which is composed wholly or substantially wholly of such textiles, as claimed by counsel for the Government, or whether it was intended to be sufficiently comprehensive to include yarn composed in chief value of such textiles, but containing a substantial portion of cotton, as claimed by the importer and as held by the trial court.

It is well settled that the general rule is that when a tariff statute provides for "an article of specified material, without declaring to what extent it must be composed of that material, it is at least confined to merchandise of which the specified material is that of chief value or is the predominant one therein," and the words "composed of," "made of," and "kindred expressions" in tariff statutes may, according to the context, mean wholly or substantially wholly of a specified material, or wholly or in chief value of such material. *Vantine & Co.* v. *United States*, 3 Ct. Cust. Appls. 488, T. D. 33124; *Kenyon Co.* v. *United States*, 4 Ct. Cust. Appls. 344, T. D. 33529; *Blumenthal & Co. et al.* v. *United States*, 5 Ct. Cust. Appls. 327, T. D. 34529; *Steinhardt & Bro.* v. *United States*, 8 Ct. Cust. Appls. 372, T. D. 37629; *Simiansky & Co.* v. *United States*, 9 Ct. Cust. Appls. 288, T. D. 38224; *United States* v. *Kalter Mercantile Co. et al.*, 11 Ct. Cust. Appls. 540, T. D. 39680; *United States* v. *Linen Thread Co.*, 13 Ct. Cust. Appls. 359, T. D. 41257.

In its decision, the trial court quoted from our decision in the case of *United States* v. *Linen Thread Co.*, *supra*, and seemingly relied upon it as controlling in principle of the issue in the instant case.

In the *Linen Thread Co.* case, *supra*, we held that paragraph 1011 of the Tariff Act of 1922, which provided for "Plain-woven fabrics, not including articles finished or unfinished, of flax, hemp, ramie, or other vegetable fiber, except cotton, weighing less than four and one-half ounces per square yard," was not intended to be limited, due to its context and that of other paragraphs *in pari materia*—1009 and 1010—of that act, to plain woven fabrics composed *wholly or sub-*

*stantially wholly* of "flax," and that plain-woven fabrics composed in *chief value* of flax, the other statutory requirements being present, were dutiable under that paragraph. We there followed and applied the so-called "chief value" rule, and held that the provisions of the statute under consideration did not require that the fabrics provided for in paragraph 1011, *supra*, be composed wholly or substantially wholly of the materials enumerated therein.

The provisions there involved related to fabrics; whereas, the provisions of paragraph 1303, *supra*, relate to spun yarn.

Under schedule 13 of the Tariff Act of 1930, the Congress has provided in paragraph 1301 for filaments and yarns "of rayon or other synthetic textile" of certain weights and length; in paragraph 1302, for certain waste, filaments, noils, slivers, tops, and roving of rayon or other synthetic textile, and for "garnetted or carded" rayon or other synthetic textile; in paragraph 1303, for "Spun yarn," singles or plied, of rayon or other synthetic textile; in paragraph 1304, for yarn, "put up for handwork, and sewing thread" of rayon or other synthetic textile; in paragraph 1305, for "Rayon or other synthetic textile in bands or strips not exceeding one inch in width, suitable for the manufacture of textiles"; in paragraphs 1306 to 1311, inclusive, for certain fabrics, articles, and wearing apparel, composed *wholly or in chief value of* rayon or other synthetic textile; and in paragraph 1312 for "Manufactures of filaments, fibers," etc., composed *"wholly or in chief value of rayon or other synthetic textile,* not specially provided for."  (Italics ours.)

Restated, the Congress has provided in paragraphs 1301 to 1305, inclusive, for rayon or other synthetic textile in various forms, including filaments, yarn, spun yarn, and bands or strips; in paragraphs 1306 to 1311, inclusive, for certain named articles or fabrics composed *wholly or in chief value* of rayon or other synthetic textile; and in paragraph 1312 for manufactures of fibers, filaments, etc., composed *wholly or in chief value* of rayon or other synthetic textile, not specially provided for.

When H. R. 2667, which later became the Tariff Act of 1930, passed the House of Representatives, paragraphs 1301 to 1305, inclusive, provided, respectively, among other things, for "Rayon yarn," "Rayon waste," "Spun rayon yarn," "Rayon yarn put up for handwork," and "Rayon in bands or strips."

In its report to accompany H. R. 2667, relative to the term "rayon," the Committee on Ways and Means of the House of Representatives (Report No. 7, Tariff Readjustment, 1929, p. 121) made the following observation:

Shortly after the enactment of the Tariff Act of 1922, both the manufacturers and merchants of these products, which were then quite generally known as

artificial silk, sought to eliminate that name because on the one hand objection was made to the word "artificial" and on the other to the word "silk." In consequence, a conference was held by manufacturers and representatives of the National Retail Dry Goods Association who proceeded to consider a new name for this rapidly growing product. The term "rayon" was finally adopted in May 1924, and since then it has been generally used in the trade except by one or two parties interested in maintaining their own trade names. There seems, however, to be no valid objection to the adoption of this generic term, as it does not represent any particular process or any particular manufacturer. This committee has therefore concluded to adopt this name, "rayon," as the generic term to apply to all of these processes or manufactures and to that end a definition has been developed and inserted in paragraph 1313 to be used for the purposes of the tariff act.

The committee also stated in its report that—

The various paragraphs follow substantially the classification in the silk schedule, with reference to the character of the groups of articles.

During the consideration of H. R. 2667, *supra*, the Committee on Finance of the Senate re-wrote the paragraphs of the rayon schedule into their present form, and, in explanation of its action, stated:

Rayon, the designation adopted in 1924 by the National Dry Goods Association to supersede the term "artificial silk," is employed in the House bill as a generic term applicable to all types of chemical yarns now commercially produced. Sponsored and promoted by the group of manufacturers employing the viscose process, which represents more than 80 per cent of the industry, the term "rayon" has not been adopted by the group of three companies using the nitrocellulose, cuprammonium, and cellulose acetate processes as a descriptive name for their products. Objection has been made particularly to the use of the coined word "rayon" as a term inclusive of yarns made by the cellulose acetate method. These yarns have chemical and physical properties sufficiently dissimilar to require dyes and dry-cleaning reagents wholly different from those employed in the treatment of yarns made by the other three processes. Recognizing the possibility of confusion and loss to the consumer by merging the identity of such yarns with other types of chemical yarns under "rayon" as a common generic name, the committee has adopted the principle of the Goldsborough amendment. Accordingly, the word "rayon," wherever used in the House bill as a substantive, is supplemented by adding the words "or other synthetic textile." When employed as an adjective, before such nouns as "manufactures," "yarns," "waste," "filaments," "sewing thread," etc., the change is made by adding after these words the modifying prepositional phrase "of rayon or other synthetic textile."

It appears from Conference Report No. 1892, pp. 86 and 87, that the Senate amendments to the paragraphs in the rayon schedule, which added the words "or other synthetic textile" to the rayon provisions, were not intended to change "the legal effect of the House bill" in other respects, but were made because of the fact that there were synthetic textiles not known in the trade by the name of "rayon."

The yarns and thread provided for in paragraphs 1303 and 1304, *supra*, are, of course, manufactures of fibers or filaments of rayon or other synthetic textile. However, in view of the fact that the Con-

gress provided in paragraphs 1306 to 1311, inclusive, for certain fabrics or articles *wholly or in chief value* of rayon or other synthetic textile, and in paragraph 1312 for manufactures *wholly or in chief value* of fibers and filaments of rayon or other synthetic textile, not specially provided for, which provision, obviously, includes spun yarn composed *in chief value* of rayon or other synthetic textile, we think it was the congressional intent to limit the provision in paragraph 1303 for spun yarn to such as was composed *wholly* or *substantially wholly* of rayon or other synthetic textile. As thus construed, the provision in paragraph 1303 for spun yarn of rayon or other synthetic textile, and that in paragraph 1312 for manufactures of fibers and filaments composed *wholly or in chief value* of rayon or other synthetic textile, not specially provided for, are harmonized, and full effect given to both. See *Carey & Skinner* v. *United States*, T. D. 38037, 36 Treas. Dec. 472, where the provision for "cotton yarn," contained in paragraph 250 of the tariff act of 1913, was held by the trial court to include *only* such yarn as was composed *wholly or substantially wholly of cotton.*

The Congress was fully aware of the fact that spun yarn is made of fibers or filaments. It was also aware of the fact that paragraph 1312 includes yarn composed wholly or in *chief value* of rayon or other synthetic textile, not specially provided for, and that the rate of duty for such yarn was 32½ cents per pound and 15 per centum ad valorem higher than that provided for spun yarn, if plied, in paragraph 1303, *supra*.

It is clear, therefore, that, if paragraph 1303 was intended to include spun yarn composed in *chief value of rayon,* or other synthetic textile, *and a substantial portion of some other material,* paragraph 1312 was not intended to cover any spun yarn. We are unable to believe that such was the intent of the Congress.

The involved merchandise is composed in a substantial portion— 20 per centum—of cotton. It is not, therefore, composed wholly or substantially wholly of rayon or other synthetic textile. Accordingly, it is not provided for in paragraph 1303, *supra*, as held by the trial court, but is dutiable as assessed by the collector under paragraph 1312, *supra*. See *United States* v. *Burne*, 4 Ct. Cust. Appls. 298, T. D. 33515; *Glass & Co.* v. *United States*, 4 Ct. Cust. Appls. 430, T. D. 33856.

For the reasons stated, the judgment is *reversed*.