(C. D. 93)

ALFRED KOHLBERG, INC. v. UNITED STATES

United States Customs Court, Second Division

(Decided February 9, 1939)

*Lane & Wallace* (*Samuel Isenschmid* of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard E. Welsh*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges; DALLINGER, J., concurring in the conclusion

TILSON, Judge: In this suit against the United States the plaintiff seeks to recover a judgment for a certain sum of money alleged to have been illegally levied on an importation of gloves from China. There is nothing in the official papers forwarded by the collector from which we can ascertain how the merchandise was classified. However, since this case was tried and submitted by counsel upon the theory that the merchandise was classified as lace gloves and assessed with duty at 90 per centum under paragraph 1529 of the Tariff Act of 1930, we shall adopt that theory and decide the case accordingly. We can conceive of no legitimate reason why the collector should fail and refuse, and have the customs regulations so changed that he will be permitted to continue to refuse, to furnish this court with a clear succinct statement of his classification. To refuse to furnish such a statement is not only unfair to this court, but also to the importers, who are required under the law, first of all, to prove that the collector's classification is erroneous. How can the importer establish that the collector's classification is erroneous unless he is first advised in some manner what that classification is?

In this case, as heretofore stated, counsel proceeded upon the theory that the gloves were classified as lace gloves, but, had counsel not elected to proceed upon such a theory, then he would have had a perfect right, under the law, to have demanded that he be furnished with the collector's classification, in order that he might know what he had to meet before proceeding to trial. Until the collector has by a proper statement advised the importer of his specific classification of imported merchandise he has not acted in the same spirit of fairness towards the importer which the importer, under the law, is required to manifest when he files a protest against the collector's action.

Plaintiff claims the merchandise should have been classified as outerwear, or other articles, knit or crocheted, and assessed with duty at 45 per centum ad valorem under paragraph 917, or as wearing apparel in chief value of cotton, not specially provided for, and assessed with duty at 37½ per centum ad valorem under paragraph 919 of said act.

At the trial four samples of the merchandise, the proper classification of which we are here called upon to determine, were admitted in evidence and marked Collective Exhibit 1. Other exhibits were also admitted in evidence, all of which have had our careful inspection, examination, and consideration.

Counsel for the plaintiff called as his first witness the president of the importing corporation, who testified that he has been dealing in laces, both machine made and hand made, since 1908; that since 1915 he has dealt principally in Chinese hand made laces, including filet, crochet, Venise, Cluny, and other types; that he has visited China about eight or nine times during that period to buy and to have made laces of various types, and that he has also seen them made in this country and some other foreign countries. He also testified that the cuffs on the gloves in this case are lace cuffs; that the hands and fingers of the gloves are called the bodies of the gloves, and that the bodies of the gloves are not lace; that these gloves are hand crocheted, and that his company sells them in this country as hand crocheted gloves and never as lace gloves; that he saw these gloves made in China in 1935 when he originated the making of crocheted gloves in Shanghai.

This same witness then explained that these gloves are made in one process from a spool of thread with a crochet hook; that the hand is generally crocheted first, then the fingers, and then the cuffs, but sometimes they start with the fingers and crochet them and then crochet the hand and then the cuff; but that as a rule they crochet the hand first; that it is all done at one time by one worker; that in all his experience he had never seen one of these gloves crocheted separately and then subsequently attached to the cuff; that the cuff is a continuation of the top of the hand, and that the making of the cuff is not something that is done at a separate time and then attached later. It is all a continuation of the same thread.

As to the manner in which the gloves are made, as explained by plaintiff's witness, none of the witnesses disagreed in any material respect. In his brief filed herein, counsel for the defendant concedes that the gloves were made substantially in the manner testified to by the plaintiff's witness.

On this state of the record as to the manner in which the gloves are made or produced, counsel for the plaintiff contends that under the principle of a long line of decisions of this court and the appellate court the gloves in question are not made or composed in part of lace because, according to the unanimous evidence of the witnesses, they. were made all in one continuous operation, and any lace that may be in them, as finished gloves, had no prior separate and distinct existence as such, and was not subsequently added to them as such.

A recent decision by our appellate court on this subject is found in the case of *Cohn* v. *United States*, 25 C. C. P. A. 220, T. D. 49335, in which the court stated:

* * * The reason urged by the appellant is that under a long line of decisions by this court and the United States Customs Court, the language "manufactured wholly or in part of wool felt" must be construed to mean that there must have been felt before the hat bodies were manufactured, and if there was no felt as an independent entity, and the manufacture of the hats or hat forms and the felt proceeded simultaneously, then the bodies and shapes, etc., were not manufactured wholly or in part of wool felt.

* * * * * * * *

. It is quite plain, from an examination of the authorities, that the law is as has been urged herein by the appellant. * * *

The court then proceeded to review the decisions in the cases of *Burlington Venetian Blind Co.* v. *United States*, 1 Ct. Cust. Appls. 374; *United States* v. *Burlington Venetian Blind Co.*, 3 Ct. Cust. Appls. 378; *United States* v. *Macy & Co.*, 7 Ct. Cust. Appls. 8; *Western Blind & Screen Co.* v. *United States*, 9 Ct. Cust. Appls. 68; *United States* v. *Dodge*, 13 Ct. Cust. Appls. 222; *Angel & Co.* v. *United States*, 15 Ct. Cust. Appls. 19; *Curtis & Von Bernuth* v. *United States*, 22 C. C. P. A. 651; *Swedish Venetian Blinds Co.* v. *United States*, 24 C. C. P. A. 20, and *Middleton* v. *United States*, 25 C. C. P. A. 155.

After reviewing the authorities above cited, the court said:

In. addition to the authorities cited, there are many applicable authorities in the reports of the United States Customs Court which it will not be necessary to refer to here, but which are in point and are fully digested and noted in the briefs.

From these citations it is apparent that from the first session of this court it has been a uniform and well-settled holding that the language "made of" or "manufactured of" presupposes that the material of which the article is made or manufactured exists before the article itself comes into existence.

In the *Macy* case, *supra*, the court specifically held as follows:

Now, we think it is clear that the quoted part of paragraph 358 requires that an article to be made in whole or in part of braids thereunder must be made in

whole or in part of something which has already attained a status or condition entitling it to be regarded as a braid in and of itself. * * *

This principle is succinctly stated by Judge Brown in the case of *Gavin* v. *United States*, T. D. 47985, as follows:

We are thus faced with a settled customs rule of construction to the effect that the words "manufactured wholly or in part of wool felt" require, first, the creation of the distinct article "wool felt" and the manufacture of the articles mentioned in the paragraph from it. Consequently, an article manufactured by a process which does not first produce the material "wool felt," but produces a completed hat of a felted nature or like felt, is not included in those words. * * *

In the instant case there is not even a suggestion by anyone that any part of these gloves which may be lace had already attained a status or condition entitling it to be regarded as a lace in and of itself prior to its entering into and becoming a part of these gloves. All of the evidence is to the contrary, and in fact counsel for the defendant practically conceded this to be a fact.

In view of the long line of decisions by our appellate court and a longer line of decisions by this court dealing with this question we have no hesitancy in holding that the gloves in this case are not made or composed in whole or in part of lace, within the decisions hereinbefore cited.

Counsel for the plaintiff contends in his brief filed herein that in order for a glove to be dutiable under paragraph 1529 as a lace glove or lace article it must be composed substantially wholly of lace, and argues from this that the cuffs, which are conceded to be lace, and the three lines and diamond design, even if they themselves be lace designs, on the back of the gloves, do not make the gloves substantially wholly of lace, since the entire hands, including the fingers, except the three lines and diamond design, are made of mesh which is not lace.

After making the above contention counsel for plaintiff quotes the following from the case of *United States* v. *Burne*, 4 Ct. Cust. Appls. 298, T. D. 33515:

* * * And to the same effect has been similar adjudication as to the effect of such descriptive words as "cotton" when adjectively applied to such articles or importations as gloves, or cloth, or the like. That uniform course of decision and administrative construction has been that where a tariff provision such as *"cotton gloves"* is employed by Congress it does not mean wholly of cotton but substantially entirely of cotton. That is to say, there may be a foreign admixture with the cotton, provided that admixture, however, does not amount to a necessary or substantial portion of the imported article. * * *.

 *     *     *     *     *     *     *

In order to be included within the provision for "cotton gloves," as in paragraph 328, *supra*, the gloves must be substantially wholly of cotton—that is to say, they can not be "cotton" gloves and have a substantial portion thereof made of wool. Having a substantial portion thereof made of wool they are not within that paragraph. * * *

In the case of *United States* v. *Barham,* 26 C. C. P. A. 83, T. D. 49614, there was presented for determination the question of whether the provision for "Spun yarn of rayon or other synthetic textile" in paragraph 1303 of the present act required that such yarn must be substantially wholly of rayon or other synthetic textile, or whether the provision was satisfied if such yarn was composed in chief value of rayon or other synthetic textile. In answering that question the appellate court said:

> The issue presented is one of law, and involves the construction and application of the quoted provisions of the tariff act. The question is whether the provision for "Spun yarn of rayon or other synthetic textile," contained in paragraph 1303, *supra*, was intended by the Congress to be limited to yarn which is composed wholly or substantially wholly of such textiles, as claimed by counsel for the Government, or whether it was intended to be sufficiently comprehensive to include yarn composed in chief value of such textiles, but containing a substantial portion of cotton, as claimed by the importer and as held by the trial court.
>
> It is well settled that the general rule is that when a tariff statute provides for "an article of specified material, without declaring to what extent it must be composed of that material, it is at least confined to merchandise of which the specified material is that of chief value or is the predominant one therein," and the words "composed of," "made of," and "kindred expressions" in tariff statutes may, according to the context, mean wholly or substantially wholly of a specified material, or wholly or in chief value of such material. * * *

We must therefore determine whether according to the context of paragraph 1529 the provision for "laces, lace fabrics, and lace articles, made by hand * * * and fabrics and articles in whole or in part thereof," should be construed as requiring that the gloves in this case must be made wholly or substantially wholly of lace, or whether said provision is satisfied when the gloves are in chief value of lace.

In the present case there is no evidence to show whether or not the cuffs on the gloves, which are conceded to be lace, form a necessary part of said gloves, since some gloves are made with cuffs and some gloves are made without cuffs. However, an examination of the samples in evidence, in connection with the testimony, establishes that the cuffs of these gloves, conceded to be lace, form a substantial portion of the gloves. Therefore, even if we should construe the above-quoted provision in paragraph 1529 as requiring that these gloves be substantially wholly of lace in order to be included within said provision, it would appear that they are without said provision for the reason that the concededly lace cuffs amount to only a substantial part of the gloves. As stated in the *Burne* case, *supra:*

> That is to say, there may be a foreign admixture with the cotton, *provided that admixture,* however, *does not amount to a* necessary or *substantial portion of the imported article.* [Italics ours.]

However, we are not convinced from a careful consideration of the language employed in said paragraph 1529 that the provision therein,

here under consideration, should be construed as requiring that these gloves in order to be dutiable thereunder should be substantially wholly of lace, if indeed that principle is at all applicable in this case.

The citation of the *Burne* case, *supra*, in plaintiff's brief, appears to have been based upon the following, contained in said brief:

We conceive a lace article to be one made or composed *substantially wholly* of lace, and that a lace glove is one made or composed *substantially wholly* of lace.

Just what portion of any given article must have a lace design worked upon it before the entire article becomes lace we do not feel called upon to determine in this case, since there is no evidence before us on this point in this case. We can conceive of a net bedspread with a lace design in the center only two inches square, or a net dress with only a small meager lace collar, and the lace designs in each instance being produced at the same time and by the same means which produced the bedspread and the dress. Whether such articles would be lace articles we are not, on this record, prepared to say.

One of the sample gloves in evidence appears to have 38 holes of the mesh on the back of the hand filled in and another one 47 of the holes in the mesh filled in, and it is contended that this makes the entire hand of these gloves lace. Using its common knowledge, could this court say that the hand with 47 holes filled in is a lace hand, and that the hand with only 38 holes filled in is not a lace hand? We do not think so. Let us suppose that only one hole of the mesh were filled in on the hand, would that one hole being filled in make the entire hand of the glove a lace hand? This is a question which we feel can be decided only upon the testimony of experts, and we do not feel that it would be proper for this court to attempt to determine this question based on its common knowledge of the subject.

At the trial of this case testimony was offered by both parties, the witnesses called by the plaintiff insisting that the hand portion of these gloves was nothing more than mesh or lace mesh, and that it was not lace, while the defendant's witnesses insisted that the hand portion was lace. Some of the defendant's witnesses, however, admitted that the plain portion of the hand is lace mesh and that lace mesh is not the same thing as lace; that mesh is only one of the elements in lace, and that an ornamental design must be added to make lace; that lace mesh is something different from lace; that the diamond-shaped design on the back is the only thing that makes the hand lace, and that most of the body of the glove is plain mesh.

From a careful consideration of paragraph 1529 of the Tariff Act of 1930 and paragraph 1430 of the Tariff Act of 1922, we are of the opinion that the Congress has manifested an intention to differentiate between an article wholly or in part of lace and an article composed in any part, however small, of lace. The provision "and articles. *composed* in any part, however small, of lace," under the prevailing deci-

sions on the subject hereinbefore referred to, require, first, the creation of the distinct article "lace" and the subsequent use of that distinct article "lace" as such in the manufacture or production of another article in order that the resultant article be an article made or composed in part of lace. If in the manufacture or production of the other article, the distinct article "lace" is destroyed, then that other article is not an article in part of lace, or an article made or composed in part of lace.

Under the involved provision of said paragraph 1529—"articles wholly or in part" of lace—it would seem that the Congress intended to get away from the line of decisions heretofore referred to, holding that, in order for an article to be made or composed in part of lace, that article must be made or composed in part of that which prior to its entry into that article had reached a stage of manufacture entitling it to be regarded as a lace in and of itself, and include therein any article, any part of which is in fact lace, such as the gloves in this case, the cuffs of which are conceded to be in fact lace.

The fact that these gloves are made of a single thread and by a continuous operation, and the concededly lace cuffs were not made as a distinct article of lace and then attached to the gloves, does not serve to make the cuffs any the less lace, nor does it serve to make the imported article any the less a glove, a substantial portion of which is lace. Not a glove composed in any part, however small, of lace, but nevertheless a glove, a substantial, if not an essential, portion of which is lace, and that would appear to be all the provision in paragraph 1529 requires.

In view of the language used in paragraph 1529 of the Tariff Act of 1930, it is our opinion, and we so hold, that the provision therein for laces, lace fabrics, and lace articles should not be construed as requiring that such articles should be composed substantially wholly of lace. This conclusion is supported by numerous cases decided by this court and also by the appellate court. In the case of *Kupfer Bros.* v. *United States*, 7 Ct. Cust. Appls. 86, T. D. 36423, the appellate court stated:

In enacting paragraph 332, tariff act of 1913, Congress struck from the corresponding paragraph (415), tariff act of 1909, the terms "bands" and "strips." This evidences a congressional intention to exclude bands and strips from the operation of the paragraph and restrict it to the shapes or designs named and such as are *ejusdem generis* in the strictest sense.

To the same general effect is the holding of the appellate court in *United States* v. *Post Fish Co.*, 13 Ct. Cust. Appls. 155, T. D. 41022; *Borden & Riley Paper Co.* v. *United States*, 14 Ct. Cust. Appls. 116, T. D. 41645; *United States* v. *Brown*, 13 Ct. Cust. Appls. 3, T. D. 40846; *United States* v. *Doragon*, 13 Ct. Cust. Appls. 182, T. D. 41051; *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls.

190, T. D. 41052; *Esposito* v. *United States*, 12 Ct. Cust. Appls. 334, T. D. 40485, and *Isler & Guye* v. *United States*, 10 Ct. Cust. Appls. 74, T. D. 38339.

Of course, we recognize the fact a change in language ordinarily must be taken as indicating a change in legislative intent, but we are not unmindful of the fact that where the language used in the enactment of a statute is so plain as to be readily understood after the changes have been made, the rule has no application. In the Tariff Act of 1913, paragraph 358, provision was made for "Laces, lace window curtains * * * coach, carriage, and automobile laces, and all lace articles of whatever yarns, threads, or filaments composed * * *." When the Congress came to enact paragraph 1430 of the Tariff Act of 1922 it provided only for "Laces, lace window curtains, burnt-out laces * * *." However, in the enactment of paragraph 1529 of the Tariff Act of 1930, the Congress specifically provided for "Laces, lace fabrics, and lace articles * * *."

Speaking with reference to the elimination from paragraph 1430 of the Tariff Act of 1922 of the provision for "coach, carriage, and automobile laces, and all lace articles of whatever yarns, threads, or filaments composed * * *" which was contained in paragraph 358 of the Tariff Act of 1913, the appellate court in the case of *United States* v. *Littwitz*, 18 C. C. P. A. 341, T. D. 44588, said:

Paragraph 358 of the Tariff Act of October 3, 1913, provided for laces, all lace articles of whatever yarns, threads, or filaments composed, and for all other articles or fabrics made wholly or in part of lace. Following this was a further provision for articles made in whole or in part of any of the foregoing fabrics or articles. Here was a multiplication of provisions covering the same things. Obviously, some of them were unnecessary. In the preparation of the Tariff Act of 1922, two of these provisions were omitted, retaining only, in paragraph 1430, the provision for "laces, * * * and all fabrics and articles composed in any part, however small, of any of the foregoing fabrics or articles." *We are unable to discern how anything can be inferred from this except the fact that the Congress, in the revision of 1922, was endeavoring to simplify this provision. * * *.* [Italics ours.]

If, as stated by the appellate court, "We are unable to discern how anything can be inferred from this except the fact that the Congress, in the revision of 1922, was endeavoring to simplify this provision," then such a holding must ascribe to the Congress the doing of an idle and useless thing or of rendering complex that which it had clarified or simplified when, in the enactment of paragraph 1529, it again inserted the provision for "lace fabrics and lace articles," and yet the Tariff Act of 1930 had been in effect for some time when the decision in the *Littwitz* case, *supra*, was rendered.

After carefully considering and weighing all the evidence in this case in the light of the authorities hereinbefore cited and quoted, and for the reasons stated, we hold that the provision in said paragraph

1529 for "Laces, lace fabrics, and lace articles, * * * and fabrics and articles wholly or. in part thereof," should not be construed as requiring. that fabrics and articles to be dutiable thereunder must be composed substantially wholly of lace, but that fabrics and articles are comprehended within this provision if a substantial portion thereof is in fact lace. Since it has been conceded herein that a substantial portion of the gloves, to wit, the cuffs, are in fact lace, we hold the same to be properly classifiable as articles, a substantial portion of which is lace, and to be properly dutiable at 90 per centum ad valorem under said paragraph 1529. In so classifying and assessing duty upon this merchandise we do not wish to be understood as in any way affirming the classification of the collector, for the reason, as heretofore stated, we are unable to determine how he classified the merchandise. Judgment will be rendered accordingly.

DALLINGER, Judge: I concur in the conclusion.