(C. D. 707)

S. J. Nicholas & Co. v. United States

United States Customs Court, Second Division

(Decided November 18, 1942)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Robert C. O'Grady* and *Joseph A. Howard, Jr.*, special attorneys), for the defendant.

Before Tilson and Kincheloe, Judges

Tilson, Judge: By this suit the plaintiff seeks to recover a certain sum of money alleged to have been illegally exacted as customs duties upon an importation of rugs. Duty was levied thereon at the rate of 90 percentum under paragraph 1529 of the act of 1930, and the plaintiff claims the same to be properly dutiable at only 20 per centum under paragraph 921 of the act of 1930 and the Belgian Trade Agreement, T. D. 47600, as imitation oriental rugs, wholly or in chief value of cotton.

At the trial of the case a sample rug was admitted in evidence as illustrative of the imported merchandise and the plaintiff also introduced the testimony of two witnesses. By the testimony of the first witness it is established that the rugs in question are imitation oriental rugs. They were classified as being in chief value of cotton and this is not refuted by this record. It is therefore established that the rugs are imitation oriental rugs wholly or in chief value of cotton. The second witness testified that in his experience all of the articles enumerated in paragraph 1529 are articles or materials which exist separately.

The collector classified the instant merchandise as rugs in part of fringe and there is nothing in this record to disprove the fact that these rugs are in fact in part of fringe. This fringe is formed by omitting the weft threads and allowing the warp threads to extend over at each end of the rug, and, as we understand, all this was done in the process of producing the rugs.

In the case of *Akawo* v. *United States*, C. D. 498, the ends of the rugs were finished by omitting weft threads and allowing the ends of the warp threads to extend beyond the ends of the rugs, and knotting the protruding warp threads in groups at intervals of approximately 1¾ inches, while in the instant case the protruding warp threads are not so knotted. Relying upon this difference in construction of the rugs in the instant case from the construction of the rugs in the *Akawo* case, *supra*, and after quoting Webster's New International Dictionary definition of a "fringe" which was quoted by this court in the *Akawo* case, counsel for the plaintiff argues:

This definition which was relied upon in the *Akawo* decision, *supra*, requires that those fringes which consist of projecting ends of a fabric be made by *twisting* or *plaiting* such ends together. The projecting warp threads of exhibit 1 are not twisted or plaited together. Therefore, such ends cannot be considered to be a fringe, and accordingly the protest should be sustained for this reason.

In our decision in the *Akawo* case we did not attempt to quote all the definitions of a "fringe," but quoted only the one which was applicable in that case. In the Century Dictionary and Cyclopedia, 1913, we find the following definition of a "fringe":

1. An ornamental *bordering formed of short lengths of thread, whether loose or twisted*, or of twisted cord more or less fine, variously arranged or combined, projecting from the edge of the material ornamented * * *. [Italics ours.]

The fringe on the rugs in question appears to fall squarely within the above-quoted definition of a "fringe," and this would seem to answer the contention of counsel for the plaintiff.

Counsel for the plaintiff further contends that if the present rugs are held dutiable at 90 per centum under paragraph 1529, such a decision will have the effect of vitiating the trade agreement with Belgium,

T. D. 47600, and would be in direct conflict with the guarantee of the United States:

To exempt the products of the soil or industry of the Belgo-Luxemburg Economic Union, listed in Schedule II annexed hereto, on their importation into the customs territory of the United States of America, from ordinary customs duties in excess of those specified in the said Schedule.

The above contention is based upon the proposition that imitation oriental rugs were being imported from Belgium prior to the effective date of the said trade agreement, and were not being classified under paragraph 1529.

The second contention of counsel for the plaintiff set out above is dependent upon the assumption that he is correct in his first contention. In view of the definition of "fringe," quoted above, on the authority of *Akawo, supra,* and *Kohlberg* v. *United States,* C. D. 93, and for the reasons therein stated, we hold that the rugs in this case are rugs in part of fringe, and are therefore more than imitation oriental rugs in chief value of cotton, as provided for in the trade agreement with Belgium. We have carefully examined schedule II of the trade agreement with Belgium and fail to find therein any provision for imitation oriental rugs, wholly or in chief value of cotton, in part of fringe.

Since imitation oriental rugs, wholly or in chief value of cotton, in part of fringe, are not listed in schedule II of the said Belgium Trade Agreement, it is clear that to hold these rugs dutiable at 90 per centum under paragraph 1529 does not vitiate the said trade agreement, nor is such decision in conflict with the guarantee by the United States:

To exempt the products of the soil of industry of the Belgo-Luxemburg Economic Union, listed in Schedule II annexed hereto, on their importation into the customs territory of the United States of America, from ordinary customs duties in excess of those specified in the said Schedule.

As between the provision in the trade agreement with Belgium, T. D. 47600, for "Imitation oriental rugs, wholly or in chief value of cotton," which provision we fail to find in the Tariff Act of 1930, and the provision in paragraph 1529 (a) of the act of 1930 for "* * * fringes, * * * and fabrics and articles wholly or in part thereof, finished or unfinished, * * * by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, * * *" the latter is unquestionably the more specific, and the imitation oriental rugs, wholly or in chief value of cotton, in part of fringe, covered by this suit, are properly classifiable and dutiable thereunder.

For the reasons stated all the claims of the plaintiff are overruled. Judgment will be rendered accordingly.