**No. 54384.**—Davies Turner & Company *v.* United States, protest 138178–K/1569 (Chicago).

FORD, Judge:   This suit against the United States presents for determination the question of the proper classification of certain imported merchandise which was classified by the collector as hemp articles in part of fringe.   Duty was accordingly levied thereon at the rate of 90 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930.   Plaintiff claims said merchandise to be properly dutiable at 20 per centum ad valorem under paragraph 1011; 30 per centum ad valorem under paragraph 923; or 40 per centum ad valorem under paragraph 1023 of the Tariff Act of 1930.

In its brief filed herein, the only claim relied upon or mentioned by counsel for the plaintiff is the claim at 40 per centum ad valorem under paragraph 1023 as "All manufactures, wholly or in chief value of vegetable fiber, except cotton, not specially provided for."   We shall therefore treat the other claims as being abandoned.

The two paragraphs, so far as here pertinent, are as follows:

PAR. 1529.   (a)   * * *   fringes,   * * *   and fabrics and articles wholly or in part thereof, finished or unfinished   * * *,   by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads,   * * *,   90 per centum ad valorem.

PAR. 1023. All manufactures, wholly or in chief value of vegetable fiber, except cotton, not specially provided for, 40 per centum ad valorem.

The record consists of the testimony of one witness for the plaintiff, together with a sample of the imported merchandise, a picture from a magazine purporting to show how the merchandise is used, and an illustrative exhibit showing the appearance of the merchandise as it comes from the loom and prior to being cut apart at designated places:

The witness explained the use of the involved merchandise as follows:

As you know, when they make cheese——

\*        \*        \*        \*        \*        \*        \*

The milk is cooked up in large kettles and brought up to a certain temperature, and then it forms a curd, and when it is brought to the proper consistency, then they slip this cloth into the kettle, and they lift this whole mass out of the kettle. It is about 200 pounds at a time that they lift out like that and then they let the whey drain out of these cloths. And then they let this mass that is left in into forms, and they put this, the remainder, into the forms, and that forms the cheese, those round cheeses.

Referring to the method of producing the involved merchandise, and with particular reference to the so-called fringe part thereof, the witness stated:

These cloths are made in long pieces, maybe 90 feet long, and ever so often every 6 feet or whatever length they want to make the piece, they leave these threads here, the long threads, they leave a space in between, between this cloth and the next cloth, and the only threads that connect with the next cloth are these threads, and then later on, the pieces are cut apart to make the individual pieces. In other words, the whole thing is made on a long piece, maybe 90 feet long, and then after they have a certain length ready, they cut them individually.

\*        \*        \*        \*        \*        \*        \*

This thing has to be left in this condition because of the weight that these cloths have to carry when they are used for lifting out this mass out of the kettle. If they were to leave this fringe, the whole thing would tear out. It wouldn't be strong enough.

The witness explained further that there was some sort of a binding along the edge at the point where the weft threads are left out, and these connecting threads are secured to the rest of the fabric by knots being tied therein; this is done while the cloth is being woven, and it also prevents the last weft thread from unraveling. An examination of the sample in evidence shows that for a distance of approximately 1 inch adjacent to the edge where the knots have been tied, the weft threads have been reduced in size and appear to have been woven much closer to each other than in the remainder of the cloth. Prior to the tieing of the knots, and at the exact spot where the knots appear, an extra heavy weft thread has been woven into the cloth, and the knots are tied around this heavy thread.

The witness further explained that it was necessary to have this cloth constructed as before outlined, in order that it would not disintegrate and tear apart when it was being used to lift the heavy batch of cheese from the kettle.

In support of its contention that the involved merchandise is not in part of fringe, counsel for the plaintiff calls attention to the definition of the word "fringe" as given in Webster's New International Dictionary, 1933, quoted with approval in *Akawo & Co., Inc.* v. *United States*, 6 Cust. Ct. 370, C. D. 498, as follows:

Fringe, n. 1. An ornamental border or material for borders consisting sometimes of projecting ends of a fabric twisted or plaited together, and sometimes of loose threads of wool, silk, or linen, or strips of leather, or the like, attached to a band of the same material.

Counsel for the plaintiff also cites *S. J. Nicholas & Co.* v. *United States*, 9 Cust. Ct. 282, C. D. 707, and quotes the following therefrom:

In our decision in the *Akawo* case we did not attempt to quote all the definitions of a "fringe," but quoted only the one which was applicable in that case. In the Century Dictionary and Cyclopedia, 1913, we find the following definition of a "fringe":

1. An ornamental *bordering formed of short lengths of thread, whether loose or twisted,* or of twisted cord more or less fine, variously arranged or combined, projecting from the edge of the material ornamented * * *. [Italics quoted.]

Funk & Wagnalls New Standard Dictionary, 1942, defines "fringe" as:

fringe, *vt.* 1. To border or ornament with or as with a fringe or fringes.

fringe, *n.* 1. An ornamental border or trimming of pendant cords, loose threads, or tassels. * * *. 2. Any fringe-like or other border, edging, or margin; the outer or bounding portion; * * *.

Webster's Collegiate Dictionary, 1948, defines a "fringe" as:

1. An edging or trimming made of projecting ends of a fabric, or of loose threads, or strips, twisted or plaited together at the top. 2. Something resembling a fringe; a border; a margin; * * *.

An examination of the sample before us shows that the portion thereof which was classified as a "fringe" consists of a border, edging, or margin, more or less ornamental, composed of the projecting ends of the fabric for a distance of from ¾ to 1 inch in length, twisted, plaited, or tied together, or of loose threads of linen. In our opinion, the border, edging, or margin here in question falls squarely within one or more of the above-quoted definitions of a "fringe."

While some of the quoted definitions of a "fringe" appear to stress the feature of ornamentation, or of being ornamental, we do not feel that the definitions, taken as a whole, support the contention that ornamentation, or being ornamental, is an indispensable feature of a fringe.

As will be seen from the quoted language of paragraph 1529 (a), *supra*, we are not here concerned with the question of whether or not the involved cloth is *composed* in any part of fringe, but only with the question of whether or not the involved articles are wholly or in part of "fringe." In the case of *Alfred Kohlberg, Inc.* v. *United States*, 2 Cust. Ct. 84, C. D. 93, we said:

The fact that these gloves are made of a single thread and by a continuous operation, and the concededly lace cuffs were not made as a distinct article of lace and then attached to the gloves, does not serve to make the cuffs any the less lace, nor does it serve to make the imported article any the less a glove, a substantial portion of which is lace. Not a glove composed in any part, however small, of lace, but nevertheless a glove, a substantial, if not an essential, portion of which is lace, and that would appear to be all the provision in paragraph 1529 requires.

Our decision in the *Kohlberg* case, *supra*, was affirmed in 27 C. C. P. A. (Customs) 354, C. A. D. 111, the court, among other things, saying:

* * * It is our view that Congress never intended that the provision "articles * * * in part thereof" should be given such an interpretation as to make it subject to the application of the said principle of a preexisting component material, and the language of the provision, we think, clearly inplies that a thing may be a part of the article referred to even though the part was produced in connection with the production of the article itself. Certainly, there is nothing in the language used that even suggests that it should be given the construction which is here contended for by the importer.

As suggested by counsel for the plaintiff, the so-called fringe may not have been intended to be ornamental, but purely incidental to the production of the involved cloth. However, if a fringe was produced the fact that it exists and not the intention of the manufacturer must control the classification of the involved merchandise. *Stiner & Son and Bischoff & Co.* v. *United States*, 2 Ct. Cust. Appls. 347, T. D. 32079.

After a careful consideration of the record before us, including an inspection and examination of the samples, and for the reasons stated, we hold the involved merchandise to be in part of fringe and, as such, dutiable as classified by the collector. All claims of the plaintiff are therefore overruled. Judgment will be rendered accordingly.