UNITED STATES *v.* MEYERSON (No. 547).[1]

CARDBOARD EMBOSSED TO IMITATE LEATHER.

Plain cardboard that has been embossed to give it an appearance of grain leather by passing it between a smooth and an indented roller remains cardboard; and it is not dutiable as paper, but as cardboard, under paragraph 415, tariff act of 1909.

United States Court of Customs Appeals, October 12, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7078 (T. D. 30826).

[Affirmed.]

*D. Frank Lloyd,* Assistant Attorney General (*Thomas J. Doherty* on the brief), for the United States.
*Harvey T. Andrews* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Certain merchandise imported into the country at the port of New York was classified as uncoated paper with a surface design not produced by lithographic processes, and assessed for duty by the collector at 4½ cents per pound under the following provisions of paragraph 411 of the tariff act of August 5, 1909:

411. * * * Papers, including wrapping paper, with the surface decorated or covered with a design, fancy effect, pattern or character, whether produced in the pulp or otherwise, but not by lithographic process, four and one-half cents per pound; * * *.

Other merchandise of the very same kind, except that it lacked the surface design, was subjected to duty as *cardboard* at 35 per cent ad valorem under the provisions of paragraph 415.

To the classification and duty assessed the importer objected in due time and as reasons for his objection thereto set up in his protest that

¹ Reported in T. D. 31953 (21 Treas. Dec., 400).

all of the merchandise was properly dutiable at 35 per cent ad valorem under paragraph 415 of said act, the part of which paragraph material to this case is as follows:

415. Jacquard designs on ruled paper, or cut on Jacquard cards, and parts of such designs, *cardboard* and bristol board, thirty-five per centum ad valorem;  *  *  *.

The Board of General Appraisers sustained the protest and the Government appealed.

The goods were reported by the appraiser as follows:

(A) Plain paper boards intended to be used in the manufacture of suit cases, dutiable as cardboard at 35 per cent ad valorem under paragraph 415.

(B) Paper boards the same as A, except that they have an embossed design in imitation of the grain in leather, dutiable as paper with a surface design at 4½ cents per pound under paragraph 411.

From the uncontradicted evidence produced on the hearing the following facts appear to be established:

The goods are manufactured from paper pulp and belong to that class of manufactures from pulp known as cardboard. Cardboard is distinguished from paper as commonly understood in this, that it is thicker and heavier, stiffer and less flexible. Cardboard is not made on the usual paper machine, but on a special machine which winds up on a cylinder sufficient pulp or several layers of pulp to constitute the thickness required. It is not dried on the cylinders as is paper. Neither is it calendered in the same way. The board is taken from the cylinder wet and is dried in the air, which gives it a stiffness not possessed by paper. Moreover, as it can not be wound on the cylinder without splitting, it is calendered in sheets and not on the roll, as is paper. To make plain board the pulp is run through smooth rollers. Embossed board is produced by passing the pulp between a smooth roller and an indented roller. The testimony further discloses that cardboard is the generic name for paper boards and that in trade and commerce that term embraces the various boards, which, on account of their color and appearance and the pulp material of which they are made, have received such special names as wood board, strawboard, chip board, plain board, red fiber board, embossed-leather board, and so forth. As already stated, the plain board in this case was classified by the collector as *cardboard*, while the embossed board, composed of the same material, manufactured in the same way, intended for the same general uses, and differing in no way from the plain board, except that it had been given the appearance of grain leather with an indented roller, was classified as *paper*. Such a difference in classification may have been moved by considerations of the higher duty, but that classification can scarcely be said to be distinguished by its consistency.

On this evidence and on the record submitted in T D. 30826 the board found that the merchandise was "leather board," a special grade of paper board belonging to the general class of goods commercially known as cardboard, and that it was therefore dutiable at 35 per cent ad valorem under the provisions of paragraph 415. This finding is fully sustained by the evidence, and the decision of the Board of General Appraisers is therefore *affirmed.*