STINER & SON AND BISCHOFF & CO. *v.* UNITED STATES (No. 673).[1]

POST CARDS WITH AN INDENTED EFFECT IN GOLD.

Embossing implies a perceptibly raised surface and a raised surface that is perceptibly a form, figure, or design, but the surface of such a form, figure, or design needs, in order to be embossed, to be raised only above the surface immediately surrounding it and not necessarily above the general surface of the article. Post cards ornamented by a printing in gold on a gelatin surface and impressed with an indented design, producing thereby an effect in relief, are dutiable as cards, "either die cut or embossed," under paragraph 412, tariff act of 1909; and this whether the embossed effect was or was not intended to be produced.

## United States Court of Customs Appeals, November 28, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7202 (T. D. 31491).

[Affirmed.]

*Brown & Gerry* for appellants.

*Wm. K. Payne,* Deputy Assistant Attorney General (*Thos. J. Doherty* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

The collector of customs at the port of New York classified certain imported post cards as lithographic prints embossed, and accordingly assessed them for duty under the provisions of paragraph 412 of the tariff act of 1909, of which paragraph the following is the part pertinent to the issue:

412. Pictures, * * * cards * * *, and other articles, composed wholly or in chief value of paper, lithographically printed in whole or in part from stone, metal, or material other than gelatin * * * all other articles than those hereinbefore specifically provided for in this paragraph, * * * exceeding eight and not exceeding twenty one-thousandths of one inch in thickness, and less than thirty-five square inches cutting size in dimensions, eight and one-half cents per pound * * * and in addition thereto on all of said articles exceeding eight and not exceeding twenty one-thousandths of one inch in thickness, if either die cut or embossed, one-half of one cent per pound. * * *

To the classification of the merchandise as lithographic prints the importer made no objection. He claimed, however, that the cards were not embossed, and protested that the additional duty of one-half cent per pound imposed upon them by the collector on the assumption that they were embossed should not have been assessed.

The Board of General Appraisers overruled the protest and the importers appealed.

From the samples in evidence and the uncontradicted testimony produced on the hearing it appears that the following are the material and undisputed facts in the case:

The goods the classification of which is the subject of controversy are souvenir post cards of a special kind and make. The cards differ

---

[1] Reported in T. D. 32079 (21 Treas. Dec., 677).

from the ordinary souvenir post card in that the colors, pictures, figures, and designs with which they are embellished are not impressed directly on the paper, but on a coating of gelatin with which the reverse side of the card is surfaced. According to the testimony the cards are coated by superimposing them on glass plates which have been dipped in gelatin. When the cards are stripped from the plates they carry with them a layer of gelatin and are then ready to be printed. The printing we assume is accomplished by some photo-lithographic process, but whatever the method employed the result is that a picture or printing which is admitted to be a lithographic print is carried to the surface of the gelatin. If the embellishment of the card stopped at this point it might well be held to be a lithographic print and nothing more. It appears from the testimony, however, that at one stage or another of the manufacture of the cards the gelatin with which they are covered is softened by heat and covered with gold leaf. The cards are then run through a press and over a stamp or plate bearing a pattern or design in relief. The raised pattern or design presses the gold leaf into the gelatin and produces thereon an intaglio of itself in gold. The metal leaf which is not pressed into the gelatin is then brushed off, and the result is a lithographic picture embellished with greetings lettered in gold and with various figure designs and representations traced out in the same material. The board finds that with the exception of the lettering the effects in gold are raised above the surface of the gelatin and are therefore embossed. It is possible that here and there gold leaf which was not pressed into the design or figure stuck to the surface of the gelatin and was not brushed away after the presswork was completed, thereby giving an impression of roughness on passing the hand over the card. We think, however, that the samples and method of manufacture show with reasonable certainty that all lettering, outlines, and designs on the cards in gold, with the possible exception of certain parts of the scrollwork and other designs on Exhibit 3, Protest 419212, are intaglios and not cameos. Yet while that is true as to the ornamental effects in gold, with the exception of the scrollwork, and so forth, just mentioned, it is equally true that in the production of those effects other designs and figures have resulted which stand out in relief from the surface immediately surrounding them.

Thus, in the houses represented in Exhibits 1 and 2, Protest 442169, the boarding, the panes of the windows, the paneling of the doors, the bricks of a chimney, and the double triangular ornament in a gable are all raised above the gold border which immediately bounds them. The same may be said of the American shield and the paneling of the hand organ on Exhibit 3, Protest 419212. These are all forms, figures, or designs, and as they are actually raised above the surface

which immediately surrounds them and give the impression to the eye of standing out in relief we are of opinion that they are embossed within the accepted meaning of that term. We agree with counsel for the importer that the mere impression on a card of an intaglio design or figure does not necessarily result in the embossing of the surface surrounding it. Embossing implies not only a perceptibly raised surface but a raised surface which is distinctively and perceptibly a form, figure, or design. On the other hand, the surface of an embossed form, figure, or design need not be raised above the general surface of the article. It is enough if it be raised above the surface which immediately surrounds it. Neither does embossing necessarily require that the relief effect shall be directly produced by a die appropriate for the purpose. A die for the making of intaglios may be so used as to develop not only intaglio forms, figures, and designs but corresponding forms, figures, and designs the surface of which is in relief.

As suggested by counsel for the importer, any embossed effect in the cards here under consideration may be purely incidental to the production of the gold effects and may have been wholly beyond the intention of the manufacturers to produce. Nevertheless, if an embossed effect has been produced the fact that it exists and not the intention of the manufacturers must control classification. An attempt was made by the importer to show that cards such as those involved in this appeal are not known to the trade as "embossed cards." We think that no question of commercial designation can arise under that part of paragraph 412 which imposes an additional duty of one-half of 1 cent per pound on pictures, calendars, cards, and other articles of paper "if either die cut or embossed." Even if it be admitted that the term "embossed cards" has a specific trade meaning—that is to say, a general, uniform, and definite signification which identifies to the trade a certain distinct class of cards and distinguishes that class from all others—the admission avails nothing, for the simple reason that the duty is not laid on "embossed cards," but on cards and other articles "if either die cut or embossed." As there is no evidence in the record which would justify the conclusion that the phrase "if either die cut or embossed" conveys to the trade and commerce of the country a meaning or signification different from that conveyed by it to the popular mind, we must conclude that to that particular part of the paragraph no other interpretation should be given than that justified by the common, ordinary meaning of the terms used.

The decision of the Board of General Appraisers is *affirmed*.

DE VRIES, Judge, did not sit.