(C. D. 580)

ABSORBO BEER PAD CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 9, 1942)

*William Whynman* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before TILSON, KINCHELOE and DALLINGER, Judges; Tilson, J., dissenting

KINCHELOE, Judge: This is a suit brought by the Absorbo Beer Pad Co., Inc., against the United States for the recovery of certain duty alleged to have been improperly assessed on the imported merchandise. The merchandise, as imported, consists of pulpboard in sheets. It was returned by the examiner as embossed on both sides, and was assessed for duty by the collector at 30 per centum ad valorem under paragraph 1413 of the Tariff Act of 1930, which provides, among other things, for "pulpboard * * * embossed, printed, or decorated or ornamented in any manner." It is claimed to be dutiable at only 10 percentum ad valorem under paragraph 1402 of said act, as "pulpboard * * * not * * * embossed, printed, decorated or ornamented in any manner."

A sample of the merchandise from the instant importation is in evidence as exhibit 1. Benjamin B. Goldstein, president of the importing company, testified that they manufacture and sell so-called coasters or beer pads, and have been in that business for 7 years. He stated that the present importation came from the Plattenthal Papier-Fabricke, in Saxony, Germany; that they print the sheets of the imported merchandise in colors and designs, and then cut them out as coasters or pads, as per collective illustrative exhibit A, which was made from the merchandise in question. Collective illustrative exhibit B was put in evidence as showing the same kind of pads without the printing. The witness stated further that the said coasters or pads are used in restaurants, taverns, and bars for resting glasses of beer on them.

Inasmuch as it was shown that the merchandise under consideration is of the same general character, imported by the same plaintiff as in the case of *Absorbo Beer Pad Co.* v. *United States*, T. D. 49112, and raised the same issue, the record in said T. D. 49112 was incorporated as part of the record herein, on motion of counsel for the government.

As bearing on the issue herein, we think it well to quote the following relevant and pertinent definitions from Webster's New International Dictionary, 1936:

*emboss* v. t. 2. To raise the surface of into bosses or protuberances, esp. by pressure against a steel roller cut or engraved with a pattern; to ornament with raised work. 3. To raise in relief from the surface, as an ornament, a head on a coin, type or a device on a letterhead, or the like. Embossed work is done by mechanical means, as by embossing dies; repousse work is done with hand tools, as, embossers. 4. Hence, to adorn or embellish with rich ornamentation.

*decorate* v. t. b. To increase in beauty by the addition of something becoming or beautiful; to embellish; as, to decorate a palace wall, a grave, a pediment. 2. To set off by ornamental accessories; to deck with striking, and often incongruous, additions;

*decoration* n. 2. That which adorns, enriches, or beautifies; embellishment; ornament.

*decorative* adj. 1. Tending to decorate; pertaining to decoration; as: (a) Having a purely ornamental function. (b) suitable for decorating or embellishing; enhancing in attractiveness. 2. Aesthetics. Designed and executed to decorate rather than to represent; pleasing or intended to please by harmonious adaptation of pattern, line, color, rhythm, etc., to imposed restrictions, such as space, position, length, etc.

*ornament* v. t. To provide with ornament; decorate; embellish; as, to ornament a room, or a city.

*fancy* adj. 2. Adapted to please the fancy or taste; ornamental;—opposed to plain; as, fancy goods.

In the said incorporated case (T. D. 49112) the pulpboard was shown by the testimony to have certain markings on both sides that resembled pin points or pin pricks, produced by the application of wire screening to the rollers or the press in the process of manufacture. It was assessed for duty under said paragraph 1413 of said act of 1930 as pulpboard, embossed, decorated or ornamented in any manner, and was claimed not to be so embossed, decorated or ornamented. This court there stated that the whole question before it for determination was whether such pin-prick effect was the result of embossing, or whether, irrespective of the process by which said effect was produced, the pulpboard was in fact "decorated or ornamented in any manner," so as to bring it within the purview of said paragraph 1413.

In that case Joseph M. Greenberger, general manager of the Absorbo Beer Pad Co., plaintiff, testified that the pin-prick board was ordered as such, and that the plain pulpboard was ordered as "smooth or not pin-prick," and that the price of the pin prick was higher. Mr. Berthold Schnee, buyer for the same company, testified in that

same case that he visited the two factories of the manufacturers of the merchandise in Austria, and that in one they make only pin-prick board, because all the rollers have screens, and that in the other factory they make only plain board, where they used rollers covered with felt. He further stated that the said pin-prick pulpboard was made by running the pulp wood through a series of rollers, the same as in the manufacture of ordinary plain pulpboard, except that by the attachment of wire screens around some of the rollers the pin prick effect is produced. This court, however, was not altogether certain from that witness' testimony whether the pin-prick effect was actually produced while going through the rollers, as he stated that after the merchandise left the rollers it was in a wet condition, was cut to size, and placed in a press between screens for the purpose of extracting the water and to facilitate the drying operation, and, later on, the witness said he could not testify "if those little holes (pin pricks) were made through the rollers or were made through the press."

On the question of embossing, this court, in said T. D. 49112, quoted from *Stiner & Son* v. *United States*, 2 Ct. Cust. Appls. 347, T. D. 32079, as follows:

* * * Embossing implies not only a perceptibly raised surface but a raised surface which is distinctively and perceptibly a form, figure, or design. On the other hand, the surface of an embossed form, figure, or design need not be raised above the general surface of the article. It is enough if it be raised above the surface which immediately surrounds it. Neither does embossing necessarily require that the relief effect shall be directly produced by a die appropriate for the purpose. A die for the making of intaglios may be so used as to develop not only intaglio forms, figures, and designs but corresponding forms, figures, and designs the surface of which is in relief.

As suggested by counsel for the importer, any embossed effect in the cards here under consideration may be purely incidental to the production of the gold effects and may have been wholly beyond the intention of the manufacturers to produce. *Nevertheless, if an embossed effect has been produced the fact that it exists and not the intention of the manufacturers must control classification.* [Italics ours.]

In said T. D. 49112, this court, after quoting the definition of the word "emboss" from the New Standard Dictionary, stated:

It will be seen that "emboss" ordinarily implies some ornamental or decorative effect, although perhaps there may be some form of embossing without such effect. However, the provision of paragraph 1413 under which the imported merchandise was assessed reads "pulpboard * * * embossed, printed, or decorated or ornamented in *any* manner." So that, even if the pulpboard was not exactly embossed, it would still be dutiable under said provision if the pin-prick effect is in any way ornamental or decorative. Furthermore, the provision for "pulpboard * * * decorated or ornamented in any manner," *is descriptive rather than a matter of commercial designation, and must be determined by the effect produced and irrespective of the manner of its production.* [Italics ours.]

In this respect the present case is very analogous to that of *Mills & Gibb Corp.* v. *United States*, 14 Ct. Cust. Appls. 197, T. D. 41703, and *Wilson & Son* v.

*United States,* 14 id. 234, T. D. 41717, which involved the question of what constituted a figure under the provision of paragraph 903 of the Tariff Act of 1922, for "cotton cloth * * * woven-figured," wherein it was held whether or not cloth is figured is judged by its appearance to the eye and not by the method of weaving. Another case to the same effect is that of *United States* v. *Douglas & Berry,* 6 id. 100, T. D. 35342.

This court also referred to the case of *United States* v. *Meyerson,* 2 Ct. Cust. Appls. 225, T. D. 31953, as showing that the imitation grain-leather effect produced on the cardboard in that case by passing the pulp between a smooth roller and an indented roller was therein regarded as embossing. The court, in holding the merchandise in said T. D. 49112 to be dutiable as pulpboard decorated or ornamented in any manner under said paragraph 1413, stated further as follows:

If the cardboard with the imitation grain-leather effect was regarded as embossed, then it would seem that the present pin-prick pulpboard might also be regarded in the same way. However, it will not be necessary for us to pass on this point specifically if the pin-prick markings have otherwise "decorated or ornamented in any manner" the pulpboard in question.

We think a casual glance at Exhibit 1 in this case must lead to the latter conclusion, especially in comparison with the plain or smooth-finished pulpboard shown by Illustrative Exhibit D. Even if the pin pricks have produced no definite figure or design, they certainly create a fancy effect and make the pulpboard more attractive in appearance than the plain pulpboard. Note also *United States* v. *John B. Stetson Co.,* 21 C. C. P. A. 3, T. D. 46319.

In the later case of the *Absorbo Beer Pad Co.* v. *United States,* C. D. 32, this court found the pulpboard therein to be of the identical kind and character as that in T. D. 49112, and manufactured abroad by the same firm, namely, Guggenbacher Papierfabrik, Austria. In that case the plaintiff called Dr. Ludwig Karl Ruhmann, one of the partners of said manufacturing concern, who testified that the scarred or pin-prick effect produced on the surface of the pulpboard there in question by means of a wire screen was not done purposely to decorate or ornament the pulpboard, but was done in the process of manufacture to eliminate the water from the wet pulp. He stated, nevertheless, that his firm also makes the unscarred or plain-surfaced pulpboard, from which the water is also pressed out, but evidently not so readily, and that such pulpboard in the same importation was classified and assessed for duty as pulpboard, not embossed, or decorated, or ornamented in any manner, under paragraph 1402 of said act of 1930.

As stated by our appellate court in the *Stiner* case, *supra,* "if an embossed effect has been produced the fact that it exists and not the intention of the manufacturers must control classification." The same would of course also be true of any ornamental or decorative effect. Nor would the method or manner of producing any of such effects control the classification. Cases cited, *supra.*

It will therefore be seen that the second *Absorbo Beer Pad Co.* case (1 Cust. Ct. 115, C. D. 32) did not in fact raise any new question that was not covered by the first case (T. D. 49112), and this court accordingly followed the same ruling in holding the surface scarred or pinprick pulpboard dutiable under said paragraph 1413 of said act of 1930, as "ornamented or decorated in any manner," without finding it necessary to determine whether it was also embossed, although indicating that under the authorities it might also be so regarded.

In this third case of the *Absorbo Beer Pad Co.*, now before us for consideration, considerable evidence was introduced by the plaintiff, most of which, it may be said, is rather irrelevant and without much, if any, weight. The main point made by the plaintiff in the present case to distinguish it from the first two is that the pin-prick or indentation marks on both surfaces of the present pulpboard are less pronounced in the depth of the indentations and not perceptible to the eye when held at normal reading distance, and that it can therefore not be considered either embossed or ornamented or decorated in any manner. Also that the pulpboard here in question was made by a different manufacturer than in the prior two cases, and that the method of producing the indentation or wire marks was not the same.

During the trial the question was raised whether certain correspondence between the collector's office and William Whynman, attorney for the plaintiff in the present instance, and other reports or copies thereof which were forwarded to this court by the collector with the entry and protest papers, could properly be regarded as "accompanying papers" within the meaning of section 515 of the Tariff Act of 1930. This court ruled that as all of said papers were in reference to the particular entry and the merchandise covered by the protest, and were written before the collector lost jurisdiction, the said papers could be regarded as "accompanying papers" under said section, but that they were not necessarily competent or legal evidence before this court of the correctness of the statements made therein, or conclusive on the issue involved.

On motion of counsel for plaintiff the said papers were then formally received in evidence and marked plaintiff's collective exhibit 4 (R. 103). On further motion of counsel for plaintiff three samples of pulpboard "merely to show what the collector referred to in his letter of January 6, 1939," were received in evidence and marked plaintiff's collective exhibit 3, over the objection of counsel for the Government (R. 102).

It appears from the correspondence in said collective exhibit 4 that prior to the importation of the merchandise in question counsel for the plaintiff herein, William C. Whynman, on November 15, 1938, had submitted certain samples of pulpboard to the collector of

customs at New York with a request for information as to the classification and rate of duty such merchandise would take. Under date of January 6, 1939, Mr. Whynman was advised by G. W. O'Keefe, assistant collector, that pulpboard which is pin-pricked, checkered, or cross-grained and producing a pleasing effect, would be assessed for duty at 30 per centum ad valorem under paragraph 1413 of the act of 1930, under the decisions in T. D. 49112 and C. D. 32, but that of the samples submitted those marked B–1, B–2, and 40060 (collective exhibit 3) would be classified at 10 per centum under paragraph 1402 as pulpboard not embossed, decorated, or ornamented.

When the present importation came in and the collector classified the merchandise at 30 per centum under paragraph 1413, as pulpboard, "embossed," etc., counsel for plaintiff wrote again to the collector and claimed that the merchandise corresponded to the sample marked 40060 in collective exhibit 3, which the collector's office had indicated would be classified at 10 per centum under paragraph 1402, as not embossed, etc. Under date of February 25, 1939, Assistant Collector G. W. O'Keefe replied to Mr. Whynman as follows:

Sir:

Reference is made to your letter of January 26, 1939, regarding the pulpboard imported under entry 780668 of December 23, 1938. We now understand that the pulpboard used in the manufacture of beer pads, and imported by your client is not uniform in the amount of depth of the cross-grain or checkered perforation. We understand that the merchandise imported under the entry above named is manufactured by and sold under the same number as that previously referred to as 40060. The samples of the recent importation submitted for examination had a definite cross-grained appearance.

In view of the fact that pulpboard sold under a given manufacturer's number is not uniform, we are now of the opinion that all of the samples referred to in our letter of January 6, 1939, are dutiable at 30% ad valorem under paragraph 1413 of the Tariff Act of 1930, and fall within the purview of T. D. 49112 and C. D. 32. The appraiser describes pulpboard of the type represented by the samples as "decorated," and this description will be adopted and followed in the liquidation of entries of this merchandise.

Of course an opinion of someone in the collector's office as to the probable classification of certain merchandise on a so-called sample submitted before importation is not binding on the collector or this court in determining the proper classification of the merchandise in its imported condition. This, of course, would be especially so, if the so-called samples previously submitted are shown not to be exactly the same in character as the imported merchandise, which seems to be the case in the present instance. We think this is evident from a casual comparison of exhibit 1, representing the importation under consideration, with the three samples in collective exhibit 3, especially the one marked 40060. It cannot be denied that the indentation marks and the pin-prick or cross-grained effects on the

former are much more prominent in appearance and more perceptible to the eye than on the latter. Furthermore, it is admitted by plaintiff's witness, Goldstein, that the merchandise represented by said collective exhibit 3 is not part of the imported merchandise (R. 103).

According to the testimony of Samuel J. Neuwirth, examiner of merchandise at the port of New York for 15 years, he advisorily returned the merchandise in issue at 30 per centum ad valorem under paragraph 1413 of said act of 1930 as pulpboard embossed on both sides. He admitted that it was otherwise *not* plate finished, supercalendered or friction calendered, laminated by means of an adhesive substance, coated, surface stained or dyed, lined, or vat-lined; that while he returned it as embossed, it is also ornamented and decorated, in his opinion; that he has passed a good deal of this merchandise; that the pin-prick effect does not run uniform, and that some have more perforations than others. He stated that he passed the merchandise the subject of our decision in T. D. 49112, and that exhibit 1 in that case is the same in all material respects as exhibit 1 in the present instance; that both have marks on the surface which resemble pin pricks, although the marks on the one in the present case are not as pronounced as in the other. He stated that he did not know whether the process of manufacture was the same in both instances, and that he went by the effects that he saw. The witness was then questioned by Judge Dallinger as follows:

Judge DALLINGER. I would like to get your idea of ornamentation, decoration, embossing, etc. Assuming that the pulpboard just goes through the ordinary pulpboard making process and goes through smooth rollers with no indentation on the rollers, and then comes right out and after the water is squeezed out goes into the drying room, and nothing else is done to it; in your opinion, would you consider that decorated, ornamented, or embossed?

The WITNESS. I would not. I would call that plain pulpboard. (R. 85).

*     *     *     *     *     *     *

Judge DALLINGER. Mr. Neuwirth, from your experience as an examiner, you consider these two samples, these two exhibits, similar in all material respects?

The WITNESS. So far as the fancy effect to the surface is concerned, yes. That is why I advisorily classified it that way. I might say this. I have pulpboard coming in with an absolutely plain surface, the kind you asked me about that went through rollers with nothing on them and comes out with no design or no fancy effect on them. That kind of board would be advisorily classified by me as plain pulpboard. This product here has a fancy effect or decoration and that is why I advisorily classified it that way. There was what I would term plain pulpboard in the former case. It was an exhibit in the former case (Illustrative Exhibit B in protest 872187–G) and if you took that up you could see the plain pulpboard. That was classified as plain. This product (Exhibit 1 in present case), in my opinion, certainly has the fancy or decorated surface. (R. 86–87)

The same witness continued that he passes on pulpboard with raised or depressed surfaces, and from his experience would say that a pulpboard with a raised or depressed surface would be regarded as

a design if the design were uniform, and that pulpboard with a raised and depressed surface design would also be embossed; that exhibit 1 herein has a design and is not only embossed, but is also decorated or ornamented; and that there may be embossed pulpboard which is not ornamented or decorated. Further, that a design may be many things. It might be a pattern, and that as applied to exhibit 1 herein it has a uniform pattern, pleasing to the eye, and is an embellishment and ornamentation. The witness also stated that his advisory classification herein was based on similar merchandise held to be decorated or embossed.

Plaintiff called as one of its witnesses, Leo Weiss, who stated through an interpreter that he was in this country only 6 weeks, and that he came from Vienna; that he was a buyer of pulpboard like exhibit 1 for 7 years in Czechoslovakia, Austria, and Germany, and visited the various factories, including that of Plattenthal Papier-Fabricke, the manufacturers of the pulpboard in the present case, and saw the process by which it was made. He stated large pieces of wood are first made into smaller pieces, and then washed and granulated between two stones in large vats of water. The mass is then allowed to flow out into a large vat and pumped upstairs, and there it goes on a machine. That machine has a large ribbonlike band made out of cloth. The material runs on that band, and there is a second band that only allows a certain amount of the mass to pass through between the two bands. After that it goes through steel rollers which are set according to the thickness that is desired. From there it goes immediately to the drying chamber, after which it is cut, weighed, and packed. Also that the machines used are very expensive (R. 39).

On cross-examination the witness admitted that the pulp stock first goes on to a wire screen that has holes in it, that the water runs off while the pulp stock is on the wire screen, and that the marks that appear on exhibit 1 are made by the use of such wire screen. In this respect the process of manufacture of the pulpboard in question would appear to be no different than in said T. D. 49112, notwithstanding the claim of counsel for the plaintiff that the process in the two cases was different (R. 9). As it has already been decided, however, that it is the effect produced and not the method of producing the effect that determines whether pulpboard is embossed, decorated, or ornamented, the question of the manufacture is not so very material.

Dr. Isadore Williams was called as a witness by plaintiff. He stated that his practice is limited to diseases of the eyes and the correction of vision. He testified, in effect, that for reading a book or newspaper the ordinary distance from the eye was 13 to 15 inches, and that for writing the distance would be about 17 or 18 inches. He stated that if exhibit 1 were held at a distance of 13 to 15 inches a person with normal vision would see whatever was on it. When he was asked to

examine exhibit 1 and see if there was anything on it that appeared to him to be decorative, he answered, over the objection of government counsel, that there was not, and that it was not ornamental nor embossed. The witness stated that with his glasses his vision is normal, and that anybody else with normal vision would be expected to see the same things he does. When asked whether he perceived any indentations or markings on exhibit 1 or illustrative collective exhibit A, he stated he just saw a blur, a rough surface, which he would describe as a rough texture (R. 49–59).

As the witness' qualifications to testify on the subject of what constitutes a decoration, ornamentation, or embossing in the tariff or any other sense are not shown, his testimony is necessarily without much, if any, weight.

Donald L. Hartman was called as plaintiff's next witness. He testified that he is vice president of the Mobile Paper Mill Co., at Mobile, Ala.; that he has been making paper board for 8 years; that he sells the merchandise and assists in running the mill; that he sells all over the United States and has visited the trade, and is acquainted with the paper terms used in the industry. He stated that he knows what decorated board is; that he has handled it and sold it. That he has not handled or sold embossed pulpboard, but has seen embossed board; that embossed board is a board that is raised and has a certain design on it. When shown exhibit 1 the witness was allowed to testify, over the objection of government counsel, that it is not decorated or ornamented board, nor printed or embossed board, and that it would not be a good delivery for decorated or embossed board. On cross-examination, however, the witness admitted that the pulpboard sold by him was not as rough as exhibit 1, and that they have irregular felt marks on their sheets due to their manufacture, and that he never saw a board with pin-prick marks; that their pulpboard is not made the same way as testified to by witness Weiss; that their pulpboard has felt marks on it from the crushing it goes through between the rollers; and that those felt marks give a different appearance or effect to the surface than on exhibit 1; that "you have a different surface because of the type of machine you use." (R. 69).

Another witness called by plaintiff was Jack Kurzman, who stated that he has been a commercial artist for 15 years, and that he designs and originates ideas to be used for illustrating purposes, and that he has designed embossed articles. He was asked to state from his experience and study of art as a commercial artist, whether he would regard exhibit 1 decorated, ornamented, printed, or embossed board. He answered that he would not, and said further that he would not offer such merchandise to a customer as decorated board. On cross-examination he stated that "emboss" would imply either a raised or depressed surface, and when asked to look at exhibit 1 and state

whether in his opinion part of the surface was raised and part depressed, he answered: "I see a raised surface. This here is raised." (R. 77–79).

The Government then called as a witness Ely O. Merchant, who testified that he is secretary and treasurer of the Groundwood Paper Manufacturers' Association, which is composed of mills manufacturing various grades of paper. He stated his business was not connected with pulpboard, but that he is familiar with the manufacture of the paper of the various mills represented by the association; that he has also seen paper board and pulpboard manufactured. He stated that his eyesight was "pretty fair, I guess," and was asked to look at exhibit 1 and say whether he saw anything on the surface, and also to describe the surface to the court. An objection was interposed by counsel for the plaintiff to said question, as follows:

Mr. WHYNMAN. I object to the question. First off, he (the witness) is called as a layman and asked to describe what he sees. The court can see for itself, and he may see see things entirely different from the court, and that would not help the court any; would not be controlling. I think the question is improper at the moment.

We think the foregoing objection might apply with equal propriety to most of the testimony introduced by plaintiff's witnesses, in view of past decisions of the courts to the effect that whether an article is or is not "embossed," "figured," "decorated," or "ornamented," etc., is to be determined by its appearance to the eye, rather than by the method of producing such effects or by the intention of the manufacturer, and, further, in view of the fact that such terms have been considered descriptive rather than a matter of commercial designation.

The only exception to this general rule of interpretation seems to be where the embossing or ornamentation was considered to be inconsequential in amount or character (United States v. Mutual China Co., 9 Ct. Cust. Appls. 232, T. D. 38202), or where mere perpendicular laid lines on handmade paper, at certain intervals, not forming any pattern or design, could not be said to be decorated. United States Envelope Co. v. United States, T. D. 45333 (60 Treas. Dec. 1071), cited by plaintiff.

After fully considering the record as here presented, and upon an examination and comparison of all the exhibits herein, we can find no real or material difference in the character and condition of the so-called pin-prick pulpboard in the instant case, from that in said T. D. 49112 and C. D. 32, except that the wire screen markings in the instant case, with the resultant pin-prick, checkered, or cross-grain effects, are perhaps not as pronounced as in the other two cited cases. Such difference in itself, however, is not sufficient to change the classification of the merchandise as pulpboard, "embossed  *  *  *  or decorated or ornamented in any manner," so long as the said effects

are still perceptible to the eye of the ordinary person with normal vision, and the determination of such fact is not dependent on the judgment of any eye specialist, artist, or technician. Obviously the test for determining such question cannot very well be based alone on any noticeable difference in the depth or prominence of the indentation marks on the surface of the pulpboard, as that, of course, might be a matter of individual opinion, and consequently there could be no uniformity in the classification of the pulpboard at the different ports. It seems to us that the only real test that can safely or logically be applied here is whether the embossed or ornamental effects are, or are not, in fact perceptible to the eye when the pulpboard is held in the light at ordinary or reading distance, and for this purpose the members of this court are as competent to judge as any of the witnesses.

Upon looking at exhibit 1 herein, in the manner stated, we think it cannot be denied that the markings thereon, while somewhat less prominent than in the case of illustrative exhibits A and D, representing the pulpboard in said T. D. 49112, are nevertheless still plainly visible and perceptible to the eye, and the ornamental effects of such markings become even more apparent when contrasted with the samples of the plain pulpboard introduced in evidence in both cases.

As already indicated, we do not think that the present case presents any real distinction from the two cases already decided, in which we found the so-called pin-prick pulpboard to be decorated or ornamented, and in which we intimated that the same might perhaps also have been considered embossed. In the present instance, on the defendant's evidence, on the admission of two of plaintiff's own witnesses, and on our own careful ocular inspection of said exhibit 1, we are of the opinion, and so hold, that the merchandise here in question is also embossed as well as decorated or ornamented.

On authority of our previous decisions and cited cases, we therefore overrule the claim of the plaintiff, and affirm the collector's action herein. Judgment will be rendered accordingly.

#### DISSENTING OPINION

Tilson, Judge: Having joined with my associates in deciding the cases of *Absorbo Beer Pad Co.* v. *United States*, reported as T. D. 49112 and 1 Cust. Ct. 115, C. D. 32, which passed upon the proper classification of merchandise somewhat similar to that in this case, I regret that I am not able to join in the decision signed by my associates in this case. Because this case has been submitted upon an entirely different record to that in each of the previous cases, and because of certain errors which, upon more mature deliberation, I feel were committed in those decisions, I feel compelled to dissent from the present decision of my associates. I find no words which more aptly express

my views with reference to the errors in the previous decisions, than those used by Mr. Justice Story, when he said:

* * * I hope that I shall always have the candor to acknowledge my errors in a public manner, whenever I have become convinced of them.

The language of the two competing paragraphs, necessary to a decision of the issue here presented, is as follows:

PAR. 1402. * * * pulpboard * * * not * * * embossed, * * * 10 per centum ad valorem.

PAR. 1413. * * * pulpboard * * * embossed, * * * 30 per centum ad valorem.

First of all it is necessary for us to determine how the collector classified the merchandise in this case, in order that we may, from the evidence introduced, be able to determine whether or not the plaintiff has met that part of its burden of showing by the weight of credible evidence that the collector's classification was erroneous. On the invoice appears the following red-ink notations: "30%/1413 Embossed both sides." In the case of *United States* v. *Bullocks*, 25 C. C. P. A. 381, T. D. 49465, the merchandise there in controversy was described by the examiner or the appraiser as being "in part of braid." In holding that such description was the advisory classification of the appraiser, and on the record therein that such advisory classification by the appraiser was the collector's classification, the appellate court said:

In view of the fact that the appraiser's advisory classification of the merchandise at 90 per centum ad valorem under paragraph 1529 (a), *supra*, describes it as being in part of braid, * * * "the record is sufficient to establish the fact that the merchandise was classified" by the collector in accordance with the appraiser's advisory classification.

At the trial the examiner who examined the instant merchandise and who placed the red-ink notations on the invoice, above referred to, testified that:

It was advisorily classified as embossed both sides as wood pulpboard at 10 per cent entered under 10 per cent, under 1402, and advisorily classified as pulpboard embossed at 30 per cent, paragraph 1413, with a notation, embossing appeared on both sides.

* * * * * * *

So the collector adopted your advisory return as embossed both sides, is that right?— A. Yes, sir.

In the *Bullocks* case, *supra*, we only had the advisory classification of the appraiser that the merchandise was in part of braid and there was no evidence to the contrary, while in this case we not only have the advisory classification of the examiner or appraiser that the pulpboard was embossed, in the form of red-ink notations on the invoice, but we have the uncontradicted testimony of the examiner who placed those red-ink notations on the invoice, that such was his advisory

classification and that the collector adopted as his classification the advisory classification of the examiner, "Embossed both sides." Under the facts in this case there can be no question but that:

\* \* \* "the record is sufficient to establish the fact that the merchandise was classified" by the collector in accordance with the appraiser's advisory classification.

In the case of *United States* v. *White Sulphur Springs*, 21 C. C. P. A. 203, the merchandise was classified by the collector as "a toilet preparation" under paragraph 61 of the act of 1930, and the plaintiff claimed the same to be dutiable at only 25 per centum under paragraph 5, as " \* \* \* all medicinal preparations, not specially provided for." After a decision in that case, the defendant filed a motion for rehearing in which it insisted that "if the merchandise is not properly classifiable as a toilet preparation at 75 per centum under said paragraph 61 it is properly classifiable and subject to the same rate of duty under the latter clause of the same paragraph, *supra,* providing for bath salts, perfumed whether or not having medicinal properties."

In disposing of the Government's contention in that case, the appellate court said:

No extensive review of the record seems to be necessary. *There is nothing therein tending to show that the merchandise is bath salts.* The appraiser's report does not so designate it, *nor did the collector so classify it. His classification was as a toilet preparation. Hence there is no presumption from the classification itself that it is bath salts, and no proof was introduced which even intimates it to be such.* [Italics mine.]

The appellate court then laid down the following broad, and, in my opinion, a very sound principle applicable to any paragraph of a tariff act:

Where a paragraph of a tariff act makes provision for two or more distinctly different kinds of merchandise and the collector of customs specifically classifies an importation as one of those kinds, the legal presumption that such classification is correct attaches, but such presumption of correctness is limited to the specific classification made, and, in case it be found that the merchandise is not such specific kind, it may not be held that there is a legal presumption that it is some other kind which happens to be included in the same paragraph but of which the appraiser gives no description and the collector makes no mention in his classification.

In the instant case there is nothing in the record tending to show that the merchandise was classified by the collector as anything other than pulpboard "Embossed both sides." The appraiser's report does not so designate it, nor did the collector so classify it. The collector's classification was as pulpboard "Embossed both sides." Hence there is no presumption from the classification itself that the merchandise is other than pulpboard "Embossed both sides," and nothing in the official papers which even intimates it to be other than pulpboard "Embossed both sides."

This position finds complete fortification in a "Memorandum" submitted by the collector and forwarded as a part of the official papers in this case, in which the collector states:

The Appraiser's description of the merchandise, made in accordance with Section 500 (a) (4), Tariff Act of 1930, and Articles 772 (c) and 776 (g), Customs Regulations of 1937, was accepted and adopted by this office in liquidation, and the merchandise was accordingly classified as Embossed pulpboard at 30% under paragraph 1413 of the Tariff Act of 1930.

From what has been said it is, therefore, clear that when the plaintiff entered upon the trial of this case, the only burden it had to meet in order to overcome the presumptively correct classification of the collector was to show that the pulpboard was not embossed. Apparently as a matter of precaution, counsel for the plaintiff showed by proper evidence that the pulpboard was not plate finished; was not supercalendered; was not friction calendered; was not laminated by means of an adhesive substance; was not coated; was not surface stained or dyed and was not lined or vat-lined. This was entirely unnecessary, as the merchandise had not been so classified, and there was no evidence offered by the defendant to show that it fell within any of such categories.

Therefore, if the plaintiff has shown by proper evidence that the pulpboard in question is not embossed it has met its burden of showing that the collector's classification was erroneous, and has also met its burden of showing the proper classification. Since no one questions the fact that the merchandise is pulpboard, it was either properly classified as embossed pulpboard, or its proper classification is as pulpboard, not embossed. This is a case where evidence which is sufficient to show that the collector's classification of the merchandise as pulpboard, embossed, under paragraph 1413 was erroneous, is also sufficient to establish the claim of the plaintiff that the merchandise is properly classifiable as pulpboard not embossed under paragraph 1402. It should be made perfectly clear that the merchandise was not classified as pulpboard decorated or as pulpboard ornamented in any manner, and for that reason it is not necessary for the plaintiff to make any claim or offer any evidence that it is pulpboard not decorated or that it is pulpboard not ornamented in any manner. The sole claim and contention of the plaintiff is that it is pulpboard not embossed.

During the trial of this case there was offered and admitted in evidence as a part of the record herein, the record in *Absorbo Beer Pad Co.* v. *United States*, T. D. 49112, based upon the fact that the parties are the same in both cases and testimony to the effect that the merchandise in both cases is similar. The merchandise involved in T. D. 49112 was held dutiable as "pulpboard * * * decorated or ornamented in any manner," and not as pulpboard embossed. In-

the present case, however, the only question presented is whether or not the pulpboard is embossed, and since it was not classified as pulpboard decorated or ornamented in any manner, and the evidence is not sufficient to show that it is pulpboard decorated or ornamented in any manner, we are not here concerned with the dictionary definitions of the words "decorate," "decoration," "decorative," and "fancy."

In our decision reported as T. D. 49112, it was stated:

\* \* \* Under the circumstances, the question of whether the pulpboard is also embossed need not here be decided.

\*      \*      \*      \*      \*.      \*      \*

In the case at bar, however, it is clearly shown that the screens on the rollers or in the press were attached thereto or placed thereon or therein with the intent and purpose of producing the pin-prick effect.

A case more in point, we think, is that of *United States* v. *Meyerson*, 2 Ct. Cust. Appls. 225, T. D. 31953, 21 Treas. Dec. 400, wherein certain cardboard had been embossed to give it an appearance of grain leather.

The fact is that in the *Meyerson* case, *supra*, the cardboard therein had not been classified by the collector as embossed, it was not claimed by the importer to be embossed, nor was it held by this or the appellate court to be embossed. This was clearly apparent to us at the time we rendered our decision in T. D. 49112, as evidenced from the following quotation therefrom:

\* \* \* The merchandise had been assessed for duty under paragraph 411 of the Tariff Act of 1909, as "papers \* \* \* with the surface decorated or covered with a design, fancy effect, pattern, or character," and was claimed dutiable under paragraph 415 of that act, as "cardboard." The court held that the merchandise belonged to that class of manufactures from pulp known as cardboard, and not paper. It was therefore held classifiable as claimed.

\*      \*      \*      \*      \*      \*      \*

Of course we are not here concerned with paper, or even cardboard, and the question of embossing in said case was not an issue, as neither paragraph 411 nor 415 provided for paper or cardboard "embossed." The decision is important, however, in showing that the imitation grain leather effect produced by passing the pulp between a smooth roller and an indented roller was therein regarded as embossing.

\*      \*      \*      \*      \*      \*      \*

If the cardboard with the imitation grain-leather effect was regarded as embossed, then it would seem that the present pin-prick pulpboard might also be regarded in the same way.

I still feel that if the cardboard with the imitation grain leather effect in the *Meyerson* case, *supra*, was regarded as embossed, then it would seem that the present pulpboard might also be regarded in the same way. However, since upon more mature reflection and consideration it appears that the cardboard in the *Meyerson* case, *supra*, was not classified as embossed, was not claimed by the importer as embossed, was not held by this court or the appellate court as embossed, nor regarded by any one as embossed, I must admit that

our holding or statement in T. D. 49112 that it "was regarded as embossed" was in error, and I do not now feel that the decision in the *Meyerson* case, *supra*, should be given any controlling effect in this case.

In this case if there was anything to show that the pulpboard had upon its surface or surfaces any effect which was produced by passing the pulp between a smooth roller and an indented roller as in the *Meyerson* case, I would be inclined to hold that it was embossed. It is quite clear from the decision in the *Meyerson* case, *supra*, that any statements contained therein regarding embossing were not based upon the proposition that the only real test that could safely or logically be applied there was whether the embossed effects were, or were not, in fact perceptible to the eye when the merchandise was held in the light at ordinary or reading distance. On the contrary, all statements in said decision regarding embossing follow the statement:

From the *uncontradicted evidence produced on the hearing* the following facts appear to be established: [Italics mine.]

In the *Meyerson* case, *supra*, the merchandise was classified as *uncoated paper with a surface design not produced by lithographic processes*, and was held dutiable by this and the appellate court as *cardboard*. In the concluding paragraph of the decision in that case, the appellate court said:

On this evidence and on the record submitted in T. D. 30826 the board found that the merchandise was "leather board," a special grade of paper board belonging to the general class of goods commercially known as cardboard, and that it was therefore dutiable at 35 per cent ad valorem under the provisions of paragraph 415. This finding is fully sustained by the evidence, and the decision of the Board of General Appraisers is therefore *affirmed*.

For the foregoing reason, together with the fact that this case is submitted upon an entirely different record to those in the former cases, reported as T. D. 49112 and C. D. 32, although one of those records is incorporated herein, I do not feel those decisions are any authority for holding the instant merchandise to be pulpboard embossed.

While it is true that the record in T. D. 49112 is in evidence in this case, and in that record it was testified that all the rollers through which the pulp passed had screens, and that "* * * by the attachment of wire screens around some of the rollers the pin-prick effect is produced," it is to be noted that the entry covering the merchandise in T. D. 49112 was dated July 11, 1935, while in the instant case the entry was not made until December 30, 1938, more than 3 years after the entry of the merchandise in the former case. In the case reported as T. D. 49112 this court stated that "after the

merchandise leaves the rollers it is in a wet condition, is cut to size, and placed in a press between screens, * * *."

In the case reported as C. D. 32, this court stated that the merchandise is of the identical kind and character as that in T. D. 49112, and "it appeared from the testimony of plaintiff's own witness therein that the wire screens on the rollers or in the press were attached thereto or placed thereon or therein with the intent and purpose of producing the pin-prick effect." In both the cases reported as T. D. 49112 and C. D. 32 the merchandise was manufactured by the firm of Guggenbacher Papier Fabrik, of Austria.

In the instant case the merchandise was manufactured by Plattenthal Papierfabrik in Saxony, Germany, and the rollers between which the instant merchandise passed are "All smooth, entirely smooth." "Those rollers are entirely smooth." In the two cases reported as T. D. 49112 and C. D. 32 the issue was whether or not the pulpboard was decorated, embossed, or ornamented in any manner, while in the instant case the only issue is whether the pulpboard is, or is not, embossed.

It is not to be presumed or assumed that the witness who testified as to the method of manufacture of the pulpboard in the case reported as T. D. 49112 was attempting to testify as to the method of manufacture of merchandise which would be produced and imported more than 3 years subsequent thereto, by a different manufacturer and in a different country. Therefore, the only evidence we have as to the method employed in the manufacture of the instant merchandise is the testimony of plaintiff's witness from Vienna which was to the effect that the rollers between which the instant merchandise passes are "All smooth, entirely smooth." "*Those rollers are entirely smooth.*"

It will thus be seen that not only the manufacturer, but also the method of manufacture, the record upon which submitted and the issue presented in the instant case is each so completely different from the manufacturer, the method of manufacture, the record upon which submitted and the issue presented in the two cases reported as T. D. 49112 and C. D. 32, as to clearly distinguish this case from the two former cases.

At this point I advert to the *Meyerson* decision, *supra*, for the purpose only of quoting therefrom the appellate court's observation regarding "plain board" and "Embossed Board," which was based upon "the uncontradicted evidence produced on the hearing:"

To make plain board the pulp is run through smooth rollers. Embossed board is produced by passing the pulp between a *smooth roller* and an *indented roller*. [Italics mine.]

In our decision in T. D. 49112, this court said:

In this respect the present case is very analogous to that of *Mills & Gibb Corp.* v. *United States*, 14 Ct. Cust. Appls. 197, T. D. 41703, and *Wilson & Son* v.

*United States*, 14 id. 234, T. D. 41717, which involved the question of what constituted a figure under the provision of paragraph 903 of the Tariff Act of 1922, for "cotton cloth   *   *   *."

In the *Mills & Gibb* case, *supra*, the merchandise was classified as woven-figured cotton cloth, and was claimed to be bleached cotton cloth. In the course of its decision the appellate court stated "whether a cloth is figured or not is judged by its appearance to the eye." It is to be noted that the appellate court carefully refrained from stating that whether a cloth is *woven*-figured or not is to be judged by its appearance to the eye. I am in agreement with the holding of the appellate court as above stated. Any person with normal vision can see a figure as well as any other person with normal vision and can, therefore, determine from an ocular inspection whether or not a given piece of material has on it some kind of a figure. The determination of whether or not a given material is figured is one thing, but the determination of whether or not a given material is embossed is so materially and vastly different and so much more complicated, intricate, and technical as to make the rule for the former completely inapplicable to the latter. In my present view, therefore, there is a complete lack of any analogy between the present case and the cases quoted above upon which we relied in our decision reported as T. D. 49112.

Webster's New International Dictionary defines "figured" as follows:

1. Adorned with, formed into, or marked with, figures; as, figured muslin.

Webster's New International Dictionary, 2nd edition, defines "emboss" as follows:

*emboss.* v. t. 1. To cause to swell or protrude; to inflate.   2. To raise the surface of into bosses or protuberances, esp. by pressure against a steel roller cut or engraved with a pattern; to ornament with raised work.   3. To raise in relief from surface, as an ornament, a head on a coin, type or a device on a letterhead, or the like.   Embossed work is done by mechanical means, as by embossing dies;   *   *   *.

The Dictionary of Paper, exhibit 2 herein, defines "embossed" as follows:

A term applied to paper on which a raised or depressed design is pressed by passing the paper between an engraved steel roll or plate and another roll or plate of soft or compressible material, such as paper or cotton, or by pressure between strong coarse fabrics.   The operation is used for decorative effects and is generally applied to book, blotting, cover, and wallpapers.

Since the last definition quoted is generally applied to book, blotting, cover, and wallpapers, it might be argued that it had no application to board or pulpboard, and I therefore quote from the same authority the definition of "embossed board":

A general term for any board that has been passed through *metal rollers upon which a design has been cut.* The rollers may simply impress the design or they may be inked to add color to the pattern. [Italics mine.]

With reference to exhibit 2, Mr. Hecht, Customs expert for the Import Committee of the American Paper Industry, testified that *said exhibit contains the definitions of* papers and *paper products* as known in the industry; "The definitions are accepted in the industry as definitions of certain kinds of paper." Another witness, referring to exhibit 2, testified that it is the only authority in the trade.

In view of the foregoing and upon more mature reflection I am convinced that the cases of *Mills & Gibb, supra, Wilson* v. *United States,* 14 Ct. Cust. Appls. 234, T. D. 41717 and *United States* v. *Douglas,* 6 Ct. Cust. Appls. 100, T. D. 35342, are not any authority for holding the pulpboard herein to be embossed by the application of the rule that the only real test that can safely or logically be applied here is whether the embossed effects are, or are not, in fact perceptible to the eye when the pulpboard is held in the light at ordinary or reading distance. One of the quoted definitions states that embossed pulpboard is pulpboard that has been passed through metal rollers upon which a design has been cut. For the purpose of determining whether or not this pulpboard passed through or between two or more metal rollers, one of which was indented or upon which a design had been cut, no better evidence could be furnished than the testimony of the manufacturer, or of a person who was familiar with, and who observed the manufacturing process or operation. For the purpose of determining whether or not a material or article is figured the above authorities are accepted as the law, but I am unable to see where they have any application in determining whether or not the involved pulpboard is embossed.

This case is materially different from the former case, reported as T. D. 49112, in that in this case the sole issue is whether the pulpboard is or is not embossed, whereas in the former case the issue was whether the pulpboard was or was not embossed, printed, or decorated or ornamented in any manner, counsel having agreed at the trial of the former case that the issue therein was whether the merchandise therein was or was not "embossed, printed, or decorated, or ornamented in any manner."

In *Stiner* v. *United States,* 2 Ct. Cust. Appls. 347, in holding certain post cards to be embossed, the appellate court said:

Embossing implies not only a perceptibly raised surface but a raised surface which is distinctively and perceptibly a form, figure, or design.

If the only real test that can safely and logically be applied here is whether the so-called embossed effects are, or are not, in fact perceptible to the eye when the pulpboard is held in the light at ordinary or reading distance, then we should not only be able to see a perceptibly

raised surface but a perceptibly raised surface which is distinctively and perceptibly a form, figure, or design. If upon such examination we are able to see a perceptibly raised surface which is distinctively and perceptibly a form, figure, or design, the question immediately arises: What is the form, figure, or design which we see? A so-called pin-prick effect is certainly not a perceptibly raised surface which is distinctively and perceptibly a form, figure, or design. If we are unable to describe any form, figure, or design appearing on the pulpboard, then the answer must be that we do not see one. A description of any form, figure, or design which my associates see or find upon this pulpboard is singularly lacking in their opinion.

I have carefully examined exhibit 1, a sample of the merchandise herein, and fail to see any perceptibly raised surface which answers the definitions of "embossing" hereinbefore set out.

For the purpose of showing the process of manufacture of the instant pulpboard, the plaintiff called a witness formerly from Vienna, who, after being properly qualified, stated that large pieces of wood are made into smaller pieces, and that the smaller pieces are washed and granulated between two stones in large vats with water; that the large pieces which are ground into small fine particles are then taken out with a net; that the remainder of the mass is then allowed to flow out in a large vat and is pumped upstairs, and there it goes on to a machine which has a large ribbonlike band made of cloth; that the material runs on that band and after that band is a second band that allows only a certain amount of the mass to pass through, and that it then goes through steel rollers which are set according to the thickness desired and from there it goes immediately to the drying chamber, where it is heated; that the rollers between which the merchandise passes are "All smooth, entirely smooth." That after it comes out of the drying chamber it is immediately cut, weighed, and packed. This was the only witness to testify who had any knowledge of the actual method or process of manufacture of this pulpboard, and his testimony, therefore, stands without contradiction. When asked if there could have been any marks on the cylinders or rollers at the time the water is squeezed out that would cause this so-called pin-prick effect, the witness answered: "Those rollers are entirely smooth."

During the trial of this case the examiner who advisorily classified the merchandise was interrogated by Judge Dallinger as follows:

I would like to get your idea of ornamentation, decoration, embossing, etc. Assuming that the pulpboard just goes through the ordinary pulpboard making process and goes through smooth rollers with no indentations on the rollers, and then comes right out and after the water is squeezed out goes into the drying room, and nothing else is done to it; in your opinion, would you consider that decorated, ornamented, or embossed?

The WITNESS. I would not. I would call that plain pulpboard.

The process of manufacture outlined by Judge Dallinger is the identical process by which the instant pulpboard was produced as shown by the uncontradicted testimony of the only witness who knew how it was produced. We thus have the Government's own witness admitting in effect that the instant pulpboard is not decorated, ornamented, or embossed.

Counsel for the plaintiff further interrogated this witness on this same point as follows:

Q. Mr. Neuwirth, I will repeat this question. Assume the merchandise in this case was made on a machine which had a wire conveyor, and then passed through two smooth rolls which were not indented, serrated, engraved, or marked in any manner whatsoever, would the resultant product in your opinion be embossed or not?—A. It would not, the resultant product.

Q. The resultant product would not be embossed or decorated, is that correct?— A. That is right.

It is apparent from the foregoing that neither Judge Dallinger, nor the Government witness who advisorily classified this merchandise, was of the opinion that the only real test that can safely and logically be applied here is whether the so-called embossed effects are, or are not, in fact perceptible to the eye when the pulpboard is held in the light at ordinary or reading distance.

From the decision in the case of *United States* v. *White*, 2 Ct. Cust. Appls. 80, T. D. 31632, it would appear that the appellate court considered embossing as an additional process to which the pulpboard was subjected after it had become pulpboard. In the case of *United States* v. *Brown*, 5 Ct. Cust. Appls. 212, T. D. 34380, the merchandise consisted of whole sheepskins which had been split, tanned, and dressed and then subjected to a process known as dicing. For this purpose the skin was fastened upon a revolving drum and lines were traced upon its surface by means of pressure from an edged disk. The lines covered the entire surface of the leather and subdivided it into tiny squares, which gave to it the so-called diced effect. The Government contended this was virtually an embossing process. In disposing of this case, the appellate court said:

\* \* \* It may, indeed, be claimed that the slightly depressed lines which are traced upon the surface of diced leather serve to bring the inclosed squares into relative prominence, and thus give them the appearance and effect of raised figures. This, however, in the case of the present merchandise is theoretical rather than actual, and it is hardly fitting that the assessment of the merchandise should depend upon so nominal a consideration, for in point of fact the present article does not present the appearance of raised figures or figures in relief upon its surface, nor has it been subjected to the processes commonly used for that result.

\* \* \* \* \* \* \*

The court, therefore, holds that the merchandise at bar is not embossed or gauffre leather, and the decision of the board to that effect is affirmed.

The plaintiff introduced the testimony of five witnesses, each of whom stated positively, after proper qualification, that exhibit 1, representing the involved merchandise, was not embossed. These same witnesses also testified in effect that the merchandise was not printed, decorated, or ornamented in any manner. As against this the defendant offered the testimony of only the examiner who advisorily classified this merchandise, who stated that the merchandise was decorated, embossed, and ornamented, although this same witness had previously admitted in effect that the instant pulpboard was not decorated, ornamented, or embossed. However, after testifying that pulpboard which has a uniform raised and depressed surface design is embossed, this witness stated positively that exhibit 1 was embossed, and that the pin-prick effect on exhibit 1 does not run uniform, and that some have more perforations than others. If pulpboard must have a uniform raised and depressed surface in order to be embossed, and the pin-prick effect on exhibit 1 does not run uniform, and some have more perforations than others, how then can it be said that exhibit 1 is embossed?

The testimony of the second witness offered by the defendant need not be given any serious consideration for the reason that the witness was entirely lacking in qualifications to testify concerning pulpboard embossed or not embossed, and such testimony as this witness did give does not aid the court in determining this question.

Although witness Kurzman testified, referring to some unidentified portion of exhibit 1, that he saw a raised surface, he also testified as follows:

Q. Would you regard it as ornamented board?—A. No.
Q. As embossed board?—A. No.
Q. Printed board?—A. No.

The testimony of witness Kurzman that he saw a raised surface on some portion of exhibit 1 is not testimony that exhibit 1 was embossed decorated or ornamented.

The testimonial record in this case consists of the testimony of nine different witnesses and comprises 172 typewritten pages, in which counsel for both parties were attempting to show by oral testimony what constituted embossing. If the only real test that can safely and logically be applied here is whether the embossed effects are, or are not, in fact perceptible to the eye when the pulpboard is held in the light at ordinary or reading distance, it would appear that for that purpose this court is as competent to judge as any of the nine witnesses, and there would be no reason or excuse for taking any testimony after the sample, exhibit 1, was admitted in evidence, which was admitted at the top of page 4 of the typewritten record.

I am not unmindful of the authorities holding samples to be potent witnesses, nor do I overlook the decisions hereinbefore referred to holding that "whether a cloth is figured or not is judged by its appearance to the eye," but for the reasons heretofore set out, I do not feel this is a proper case for the application of those principles to the exclusion of any consideration of the testimony submitted. In my view the principles laid down by the appellate court in *United States* v. *Macksoud*, 27 C. C. P. A. 218, are applicable to this case. We quote the following from that case:

> With respect to the testimony in the case, it should be said that there has been no effort to establish a commercial designation of the term "straight hemstitching" different from the common meaning of the term. Of course, the rule is that where testimony relates to common meaning only, it is not binding upon the courts, but there are situations in which it is proper to look to it in connection with the merchandise itself and in connection with the definitions of lexicographers and technical authorities. *United States* v. *Scruggs-Vandervoort-Barney Dry Goods Co., supra.* We think the instant controversy presents a situation of that character and, hence, have examined the testimonial record with great care.

I see little, if any, difference in determining from an examination of the sample alone whether or not certain stitching on merchandise is "straight hemstitching," and determining from an examination of the sample whether or not pulpboard is "embossed." Indeed if such testimony is not to be considered under any circumstances, then why should the witnesses be permitted to give such testimony to the extent of 172 typewritten pages? I fully recognize the fact that such testimony is not binding upon the court, but I also recognize the fact, as has the appellate court, that there are situations in which it is proper to look to it in connection with the merchandise itself and in connection with lexicographers and technical authorities. I believe, as did the appellate court in the *Macksoud* case, *supra*, that the instant controversy presents a situation of that character and I have, therefore, examined the testimonial record with great care.

In this case I have looked to the testimony of the witnesses as to the common meaning of the term "embossed" in connection with the merchandise itself and in connection with the definitions of lexicographers and technical authorities, and after thoroughly considering and weighing all the evidence, I am satisfied, and so hold, that the merchandise in this case is not embossed within the meaning of that term as used in said paragraph 1413. I accordingly hold that said merchandise is not dutiable under said paragraph, as assessed by the collector. Since the merchandise is not embossed, it answers all the requirements of paragraph 1402 of said act for pulpboard, not embossed, decorated, or ornamented. It should be held dutiable at only 10 per centum under said paragraph 1402, as claimed by the plaintiff.

For the reasons hereinbefore stated I am compelled to dissent from the majority opinion in this case.